UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MASSACHUSETTS DEVELOPMENT FINANCE AGENCY | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 04 CV 10203 PBS |
| ADP MARSHALL, INC., a FLUOR DANIEL COMPANY, and FIREMAN'S FUND INSURANCE COMPANY | ) ) ) ) | |
| Defendants. | ) ) | |
| ADP MARSHALL, INC. | ) ) | |
| Plaintiff-in-Counterclaim, | ) ) | |
| v. | ) ) | |
| MASSACHUSETTS DEVELOPMENT FINANCE AGENCY | ) ) | |
| Defendant-in-Counterclaim. | ) ) | |

## DEFENDANT ADP MARSHALL, INC AND FIREMAN'S FUND INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF MDFA

ADP Marshall, Inc. ("ADPM") and Fireman's Fund Insurance Company ("Fireman's

Fund") respectfully submit this memorandum of law in support of their motion for summary

judgment with respect to the Massachusetts Development Finance Agency's ("MDFA")

Complaint dated December 2, 2003.

### INTRODUCTION

At the center of this dispute is the contract between ADPM and MDFA for the "planning,

design, and construction of a new 60,000 square foot Advanced Technology and Manufacturing

Center . . ." Contract at Art. II, §2 (Description of Work) (the "Contract"). See Aff. of Hughes,

-1-

¶ 2 - Exhibit A. Upon completion of the project on or about August 20, 2001, MDFA declined to fully compensate ADPM for its work and withheld final payment, which compelled ADPM to file suit to obtain complete payment.

From December 2002 through April 2003, ADPM and the MDFA litigated before the Commonwealth of Massachusetts, Division of Administrative Law Appeals ("DALA"), as to the final payment due ADPM under the Contract. In the DALA proceeding, the MDFA asserted that ADPM breached the contract in its preparation and use of design coordination drawings, and that there were damages sustained by the MDFA as a result thereof. The MDFA asserted damages resulting from this breach in the form of its entitlement to withhold $50,000 from ADPM under the Contract.

In the present action, MDFA seeks to re-litigate its breach of contract claims with an eye to obtaining a larger judgment. Such claims being advanced before this Court should have been brought as compulsory counterclaims before DALA and further, based on DALA's order which substantially relied upon MDFA's breach of contract arguments, are *res judicata*. To allow MDFA a second bite at the apple would not only be patently unfair to ADPM, who is entitled to repose after already defending against the breach of contract issues once, but it would be burdensome upon this Court to re-visit the same claims and arguments already heard and decided upon by DALA. Further, its impossible to parse out how much of the $44,620 award, allowed by DALA against ADPM, compensates the MDFA for its present claims. The heating, ventilation and air conditioning ("HVAC") work under the Contract involved the complete design, coordination and installation of the system. All aspects of the HVAC work under the Contract are interrelated. The MDFA is not entitled to a double recovery for its HVAC claims.

## SUMMARY OF ARGUMENT

MDFA had ample opportunity to raise its present claims during the DALA proceeding. These claims are substantively entwined within those decided upon by DALA, and the purported breach of contract was fully known and contemplated by MDFA, yet it failed to fully litigate the issue. Thus, MDFA has had its bite at the apple, and its current claims should be deemed compulsory counterclaims, that it failed to assert. Further, the HVAC issues raised before this Court by MDFA grow out of the same facts and circumstances that were specifically raised before DALA and were material to the DALA decision. Thus, these issues have already been considered and should not be heard by this Court under the doctrine of issue preclusion.

Alternatively, if this court finds that the HVAC issues do not squarely line up to support issue preclusion, than claim preclusion should apply: under the doctrine of claim preclusion, the MDFA opened the HVAC proverbial "can of worms," and should have enunciated all of its HVAC claims before DALA, and as such, the MDFA should be barred from now litigating HVAC design, coordination and installation issues in this present action. Heacock v. Heacock, 402 Mass. 21, 23 (1988).

Lastly, the MDFA Complaint concerns patent defects that could have and should have been raised within the one year guaranty period, but were not, and now the MDFA must be precluded from raising these concerns based upon the exclusive remedies provision of the Contract.

## CONCISE STATEMENT OF MATERIAL FACTS

1.    On or about September 7, 2000, ADPM and the MDFA entered into a contract ("Contract") for the construction of an Advanced Technology Manufacturing Center in Fall River, MA. See Aff. of Hughes, ¶ 2 - Exhibit A.

-3-

2.    The MDFA's first written notice to ADPM concerning outstanding HVAC complaints was by letter dated September 6, 2002 from William Whelan, a self proclaimed agent of the MDFA. See Aff. of Hughes, ¶ 3 - Exhibit B.

3.    In a follow up letter dated October 22, 2002, Robert Walsh of the MDFA further cast the issues which give rise to its current claims of breach within the jurisdiction of DALA, noting that "[if] ADP Marshall does not intend to do the work under protest as required under Article VIII (4) of the contract . . . then ADP Marshall is in material breach of the contract." See Aff. of Hughes, ¶ 4 - Exhibit C.

4.    In the MDFA's Proposed Finding of Facts and Rulings of Law, dated June 3, 2003 at page 15, the MDFA requested DALA to find:

> 2. ADP breached the contract by not providing Coordination Drawings in accordance with the Contract for the base building.
>
> 3. The Coordination Drawings furnished by ADP for the base building were insufficient, not complete, and properly reject by MDFA.
>
> 4. ADP failed to provide any Coordination Drawings at all for the tenant fit up work.
>
> 5. ADP is in breach of Contract for failing to provide Coordination Drawings and, therefore, it cannot collect on the Contract.
>
> See Aff. of Hughes, ¶ 5 - Exhibit D.

5.    In the MDFA's Opposition to ADPM's Motion for Reconsideration/Clarification, it argued at page 3 that:

> "This $5,380 [the amount not explicitly awarded to MDFA by DALA] is not due and owing under the contract because (a) ADP Marshall has not completed its work in accordance with the terms of the contract site."
>
> See Aff. of Hughes, ¶ 6 - Exhibit E.

6.    Mr. Wessling's expert report identifies a lack of HVAC design coordination as a defect

within the project:

> The HVAC equipment is not fully drawn on the roof plans. The required coordination does not appear to have taken place . . . This drawing [A 3.1] is not coordinated with the HVAC pipe and conduit penetration through the wall where the leaks are occurring.

> Coordination between the architectural drawings and the mechanical roof equipment is missing, from the drawings. The exterior wall penetrations related to the mechanical equipment are not detailed and not flashed or sealed properly.

HVAC coordination issues were a significant factual contention in the DALA

proceeding.

See Aff. of Hughes, ¶ 7 - Exhibit F.

7.    The MDFA produced an HVAC report dated April 9, 2003 to ADPM in this litigation on

or about June of 2004. The last hearing date before DALA was on or about April 25,

2003. See Aff. of Hughes, ¶ 8 - Exhibit G.

8.    A final judgment on the merits of the dispute before DALA was rendered on January 12,

2004. See Aff. of Hughes, ¶ 9 - Exhibit H.

9.    In its Post Hearing Brief dated June 20, 2003 at pages 1-2, the MDFA argued:

> ADP has sought to cast this claim as the adjudication of a backcharge. But in reality, the case is an attempt by ADP to collect the balance of its contract price because the backcharge asserted by MDFA was assessed as part of the contract closeout (Ex. 45). ADP should be held to the same standard and burden of proof as if it were in court seeking to recover the balance of its contract, it would be subject to proving that it performed in strict compliance with its contract in order to recover on the contract.

See Aff. of Hughes, ¶ 10 - Exhibit I.

10.   The Temporary Certificate of Occupancy for the Project was issued on August 17, 2001.

See Aff. of Hughes, ¶ 11 - Exhibit J.

## ARGUMENT

This Court should preclude the MDFA from re-litigating whether ADPM breached the contract and/or was negligent in its performance under the contract since these same facts and legal theories were advanced in a prior proceeding.

### A. DALA Has Jurisdiction to Hear MDFA's Breach Claims

DALA had the requisite jurisdiction to hear the claims between the parties. DALA's jurisdictional authority, M.G.L. ch. 30 § 39Q[1], establishes exclusive jurisdiction over "[d]isputes regarding changes in and interpretations of the terms or scope of the contract and denials of or failures to act upon claims for payment for extra work or materials . . ."[2] Further, MDFA contemplated DALA's jurisdiction over its breach claims, as reflected within its pleadings before DALA as well as its pre-hearing correspondence with ADPM.

From the beginning of its dispute with ADPM, MDFA sought to avail itself of DALA's jurisdiction over its claims. The MDFA's first written notice to ADPM concerning outstanding HVAC complaints was by letter dated September 6, 2002 from William Whelan, a self proclaimed agent of the MDFA. See Aff. of Hughes, ¶ 3 - Exhibit B. That letter described eighteen (18) work issues under the contract, of which issue numbers 4, 5, 6, 12, 13, and 16 raise HVAC related concerns. In a follow up letter dated October 22, 2002, Robert Walsh of the MDFA further cast the issues which give rise to its current claims of breach within the jurisdiction of DALA, noting that "[if] ADP Marshall does not intend to do the work under

---

[1]    This establishes DALA's construction dispute jurisdiction; DALA's jurisdiction over other matters derives from other statutes.

[2]    *According to its Mission Statement,* "The Division of Administrative Law Appeals (DALA) is an independent hearing agency that conducts adjudicatory hearings of appeals to or from certain state agencies, or as a result of a notification of intended state agency action. DALA's objective is to provide for speedy hearings and the issuance of timely, legally-competent decisions." http://www.mass.gov/dala/missionstatement.htm

protest as required under Article VIII (4) of the contract . . . then ADP Marshall is in material

breach of the contract." See Aff. of Hughes, ¶ 4 - Exhibit C.  Mr. Walsh was requiring that

ADPM follow Article VIII(4), which explicitly incorporates M.G.L. ch. 30 § 39Q and provides

for DALA jurisdiction over the interpretations of contract terms or scope of work, in performing

the work outlined in Mr. Whelan's September 6, 2002 letter.

Specifically, Article VIII (4)(d) enunciates the applicability of Section 39Q to Article

VIII (4) disputes.  Subpart (d)(i) indicates that the procedure "shall constitute the exclusive

method for resolving such disputes." (emphasis added)  The process involves an appeal to the

chief executive officer of the state agency and if a party is not satisfied, an appeal to DALA or a

court of competent jurisdiction, within 21 days of receipt of written decision or of the failure by

the chief executive officer of the state agency to issue a decision.

MDFA further contemplated DALA accepting jurisdiction over its claims of breach by

asserting such claims in its pleadings before DALA.  In the MDFA's Proposed Finding of Facts

and Rulings of Law, dated June 3, 2003 at page 15, the MDFA requested DALA to find:

> 2. ADP breached the contract by not providing Coordination Drawings in accordance
> with the Contract for the base building.
>
> 3. The Coordination Drawings furnished by ADP for the base building were insufficient,
> not complete, and properly reject by MDFA.
>
> 4. ADP failed to provide any Coordination Drawings at all for the tenant fit up work.
>
> 5. ADP is in breach of Contract for failing to provide Coordination Drawings and,
> therefore, it cannot collect on the Contract.

See Aff. of Hughes, ¶ 5 - Exhibit D.

Finally, in the MDFA's Opposition to ADPM's Motion for Reconsideration/Clarification,

it argued at page 3 that:

> "This $5,380 [the amount not explicitly awarded to MDFA by DALA] is not due and
> owing under the contract because (a) ADP Marshall has not completed its work in
> accordance with the terms of the contract site."

See Aff. of Hughes, ¶ 6 - Exhibit E.

Each of these arguments demonstrates that MDFA clearly believed that ADPM was in

breach of the contract, that there could be damages which flowed from such a purported breach,

and that DALA was the proper forum in which to raise these claims.

By asserting ADPM's conduct was violative of Contract Article VIII, MDFA squarely

cast its dispute with ADPM, including its claims of contractual breach, within the jurisdiction of

DALA.  DALA had jurisdiction to hear the claims which are now before this Court, because: 1)

the contract confers jurisdiction at Article VIII (4)[3]; and 2) the MDFA raised the same defenses,

and the underlying facts, in the hearing before DALA.  MDFA had full knowledge of its position

that ADPM purportedly breached the contract, as well as the potential legal rights which such a

breach would support, yet despite the opportunity as well as the mandate to use DALA to resolve

the dispute, MDFA allegedly declined to fully address its breach of contract claims against

ADPM, choosing instead to bring the claims piecemeal.  The MDFA would like to be able to

continually raise performance issues, piecemeal, in differing forums, to further delay the

payment of ADPM's contract balance.

Because the MDFA has failed to follow the procedure outlined in Article VIII (4)(d) for

resolving its claims, it has lost its rights under the contract.  ADPM should not be forced to go

---

[3] The MDFA's October 22, 2002 letter maintains that Article VIII (4) of the contract was
applicable to the work issues that now form the basis of the Complaint.  Further, paragraph 36 of the
Complaint relies upon ADPM failure to "perform the work under protest" which is defined by Article VIII
(4) of the contract.

through the time and expense of litigating the facts surrounding its performance under the Contract.

## B. The MDFA, By Failing to Assert Its Claims Before DALA, Waived Its Claims

By raising the issue of contractual breach before DALA as an affirmative defense, MDFA was required to fully litigate the issue, including any affirmative claims it had based upon the purported breach by ADPM. MDFA, however, knowingly chose not to make such compulsory counterclaims before DALA. Thus, MDFA has waived any such claims.

The First Circuit has outlined four (4) tests to determine whether a claim should be a compulsory counterclaim per FRCP 13(a)[4]:

> (1) Are the issues of fact and law raised by the claim and counterclaim largely the same?
> (2) Would *res judicata* bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?
> (3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?
> (4) Is there any logical relation between the claim and the counterclaim?

Eon Laboratories, Inc. v. Smithkline Beecham Corp., 298 F.Supp.2d 175, 179 (D.Mass. 2003) (quoting Iglesias v. Mutual Life Ins. Co., 156 F.3d 237, 241 (1st Cir.1998)). If a claim satisfies any one of these tests but is not raised by the party, it is waived from consideration in other proceedings. Id. (citing Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974)).

The most commonly used and accepted test from the First Circuit's battery is the "logical relation" test. Under it, "[a] counterclaim has a logical relationship to the original claim if 'it

---

[4] Of note, MRCP13(a) is substantively identical to this rule.

arises out of the same aggregate of operative facts as the original claim' in the sense that 'the same aggregate of operative facts serves as the basis of both claims'; or 'the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant.'" Eon Laboratories, Inc. v. Smithkline Beecham Corp., 298 F.Supp.2d 175, 179 (D.Mass. 2003) (quoting McCaffrey v. Rex Motor Transp., Inc., 672 F.2d 246, 249 (1st Cir.1982) (citation omitted).

The factual claims which form the basis for MDFA's current claims of breach (the design, coordination and installation of the HVAC system) arise from the same collection of facts as those called into question and already ruled upon in the DALA proceedings.[5] The present claims are not new issues (i.e. latent defects). See infra and Aff. of Hughes, ¶ 12 and 13 - Exhibits K and L. Rather, the MDFA documented HVAC complaints in a letter to ADPM dated September 6, 2002, months in advance of the start of the DALA hearings.[6] Perhaps even more telling of the identical factual bases between the claims before DALA and those now raised before this Court is the report from MDFA's own expert.

This expert report, dated March 26, 2003, was produced in final form prior to the conclusion of the hearings before DALA. Now the MDFA seeks to proffer it in support of its claims before this Court, expressly identifying a lack of HVAC design coordination as a significant defect within the project:

> The HVAC equipment is not fully drawn on the roof plans. The required coordination does not appear to have taken place . . . This drawing [A 3.1] is not

---

[5]  There are two distinct factual bases that give rise to the MDFA's Complaint: 1) the performance of the HVAC system; and 2) window/caulking leaks.

[6]  The DALA hearings occurred in December 2002 and April 2003.

> coordinated with the HVAC pipe and conduit penetration through the wall where
> the leaks are occurring.

See Aff. of Hughes, ¶ 7 - Exhibit F.

The report goes on to state:

> Coordination between the architectural drawings and the mechanical roof
> equipment is missing, from the drawings. The exterior wall penetrations related
> to the mechanical equipment are not detailed and not flashed or sealed properly.
> Id. at 8.

The MDFA had an HVAC consultant evaluate the project and produce a report dated

April 9, 2003, well in advance of the last hearing date before DALA of April 25, 2003. See Aff.

of Hughes, ¶ 8 - Exhibit G. There can be no claim that the MDFA was not aware of the entirety

of its HVAC claims prior to the conclusion of the DALA hearings.

The MDFA's own experts have identified the bases for MDFA's current claims as the

same as the bases for MDFA's claims before DALA: purportedly defective HVAC design,

installation and/or coordination. HVAC coordination issues were a significant factual contention

in the DALA proceeding. See Aff. of Hughes, ¶ 7. As the MDFA had the obligation to fully

raise these claims before DALA but failed to do so, it should be precluded from raising these

HVAC design, installation and coordination issues for a second time in a different forum.

**C. The MDFA Claims Are Barred by Res Judicata (Claim and Issue Preclusion)**

Alternatively, ADPM and the MDFA already litigated the claims of contractual breach as

to the HVAC system before DALA, and DALA rendered a decision based upon those claims.

Accordingly, the allegations of breach as to the design, coordination, and performance of the

HVAC portion of the contract have already been decided, and any re-litigation of these claims is

barred by the principle of *res judicata*.

-11-

Under the principle of *res judicata*, a claim is the same "'if it is derived from the same transaction or series of connected transactions.'" Andre Saint Louis & Others v. Baystate Medical Center, Inc., & Another, 30 Mass.App.Ct. 393 (1991) (quoting Boyd v. Jamaica Co-op. Bank, 7 Mass. App. Ct. 153, 163-164 (1979); Restatement (Second) of Judgments § 24(1)). Among the considerations in determining whether a claim is derived from the same transactions is "'[w]hether the facts are related in origin or motivation and whether they form a convenient trial unit.'" Id. (quoting Restatement (Second) of Judgments § 24(2)). *Res judicata* encompasses two (2) independent doctrines: claim preclusion and issue preclusion.

Claim preclusion "makes a valid, final judgement conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action." Heacock v. Heacock, 402 Mass. 21, 23 (1988). This is meant to give finality to an issue and repose to the parties, even if "the claimant is prepared in a second action to present different evidence or legal theories to support his claim, or seeks different remedies." Id. at 23. See also Andre Saint Louis & Others, 30 Mass.App.Ct. at 393 ("The underlying policy reason for the bar of former adjudication is that parties and the judiciary should be spared repetitive actions based on the same wrong."). Claim preclusion seeks to prevent the re-litigation of an issue "when a specific rearticulation of the claim (through expression of a new theory of grounds for relief), arising out of the same life situation, could have been, but was not, raised in the prior litigation." Andre Saint Louis & Others, 30 Mass.App.Ct. at 393 (citing Restatement (Second) of Judgments § 24 comments a and b). To assert claim preclusion, one must show: 1) the identity or privity of the parties to the present and prior actions; 2) identity of the cause of action; and 3) prior final judgment on the merits. Gloucester Marine Rys. Corp. v. Charles Parisi, Inc., 36 Mass. App. Ct. 386, 390 (1994).

Issue preclusion, on the other hand, can be used to prevent re-litigation of issues actually litigated in a prior action. <u>Fidelity Mgmt. & Research Co. v. Ostrander</u>, 40 Mass.App.Ct. 195, 199 (1996). Issue preclusion requires proof that: 1) there was a final judgment on the merits in the prior adjudication; 2) the party against whom estoppel is asserted was a party to the prior adjudication; and 3) the issue in the prior adjudication is identical to the issue in the current adjudication. <u>Commissioner of the Dept. of Employment & Training v. Dugan</u>, 428 Mass. 138, 142 (1998). Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment. <u>Id.</u> at 142.

### 1.    The MDFA and ADPM Were Both Parties to the DALA Proceeding

In the first action between the MDFA and ADPM, both parties participated in pre-hearing and post-hearing briefing and three full days of hearing before DALA. This included extensive argument and briefing by MDFA asserting that ADPM had breached the contract at issue. Thus, the parties to the DALA proceedings and this second proceeding are the same.[7]

### 2.    DALA has Issued a Final Judgment on the Merits

A final judgment on the merits of the dispute before DALA was rendered on January 12, 2004. <u>See</u> Aff. of Hughes, ¶ 9 - Exhibit H. The appeal period ran thirty (30) days after receipt of the decision by the parties. <u>See</u> M.G.L. c. 30A, §14.

### 3.    CLAIM PRECLUSION: The MDFA Has Asserted the Same Causes of Action in Both its Complaint and the DALA Proceeding

As discussed *supra*, the parties to this proceeding and the DALA proceeding are the same, and a final judgment on the merits resulted from the DALA proceeding. The only factor

---

[7] One minor exception to this point is that Fireman's Fund has been named as a defendant in this second proceeding. (<u>See</u> ADPM's Answer and Counterclaim, Exhibit 1) Fireman's Fund is in privity with ADPM for the purposes of asserting *res judicata*. <u>Mestek, Inc. v. United Pacific Ins. Co.</u>, 667 N.E.2d 292, 294 (1996). Further, as ADPM's surety, Fireman's Fund may rely upon the defenses of its principal. <u>Id.</u> at 294.

-13-

that is left in question for claim preclusion to apply is whether there is an identity of the cause of action – whether the facts are related in origin or motivation and whether they form a convenient trial unit.

Count I of the MDFA's Complaint is captioned "Breach of Contract" and alleges at paragraphs 30-32 that ADPM breached its contract with the MDFA. This, however, is not the first time MDFA has raised claims of contractual breach based on this contract against ADPM. The MDFA's general argument in the DALA proceeding was that the HVAC coordination was not properly handled by ADPM. This "coordination" effort involved the development of a compilation drawing of the HVAC, plumbing and electrical designs, for review by the MDFA. The MDFA argued that these "design coordination drawings" were not completed timely, and properly, resulting in deficient installation. This was the very focus of the DALA proceedings, as evidenced by the MDFA's Proposed Findings of Fact and Rulings of Law at paragraphs 26, 27, 41, 47, 54, and 78. See Aff. of Hughes, ¶ 5 - Exhibit D.

Further, in the MDFA's Proposed Finding of Facts and Rulings of Law, dated June 3, 2003 at page 15, the MDFA requested DALA to find:

> 2. ADP breached the contract by not providing Coordination Drawings in accordance with the Contract for the base building.
>
> 3. The Coordination Drawings furnished by ADP for the base building were insufficient, not complete, and properly reject by MDFA.
>
> 4. ADP failed to provide any Coordination Drawings at all for the tenant fit up work.
>
> 5. ADP is in breach of Contract for failing to provide Coordination Drawings and, therefore, it cannot collect on the Contract.

See Aff. of Hughes, ¶ 5 - Exhibit D.

Further, in its Post Hearing Brief dated June 20, 2003 at pages 1-2, the MDFA argued:

> ADP has sought to cast this claim as the adjudication of a backcharge. But in
> reality, the case is an attempt by ADP to collect the balance of its contract price
> because the backcharge asserted by MDFA was assessed as part of the contract
> closeout (Ex. 45). ADP should be held to the same standard and burden of proof
> as if it were in court seeking to recover the balance of its contract, it would be
> subject to proving that it performed in strict compliance with its contract in order
> to recover on the contract.

See Aff. of Hughes, ¶ 10 - Exhibit I.

Finally, in the MDFA's Opposition to ADPM's Motion for Reconsideration/Clarification,

it argued at page 3 that:

> "This $5,380 is not due and owing under the contract because (a) ADP Marshall
> has not completed its work in accordance with the terms of the contract site."

See Aff. of Hughes, ¶ 5 - Exhibit E.

Each of these arguments demonstrates that the MDFA presented that ADPM was in

breach of the contract and that there could be damages which flowed from such a purported

breach.

DALA was clearly influenced by the MDFA's arguments of contractual breach as to the

HVAC coordination drawings as justification for non-payment of the backcharge. Specifically,

in its decision granting MDFA $44,620 of the "backcharge," DALA held that "ADPM failed to

comply with the Contract provision at Section 01310 on coordination drawings." See Answer

and Counterclaim of ADPM, Exhibit 1 - DALA Decision at Pg. 31. It also determined that

"[n]ot providing an adequate and complete set of coordination drawings without resubmissions

curing the inadequacies, was a failure to fulfill an essential term of the Contract." Id. at 33.

Thus, both MDFA and DALA considered MDFA's claims and defenses to be based upon

breach of contract for failing to properly provide coordination drawings used to install the

HVAC system. MDFA spent the bulk of its arguments, both in the pleadings and before DALA, addressing ADPM's alleged deficiencies in the HVAC coordination. MDFA could have easily presented the entirety of its breach claims as they are derived from the exact same facts and circumstances and they would have made a convenient trial package.[8] MDFA failed to raise the complete spectrum of its breach claims, yet these claims are closely related in origin and motivation as those raised before this Court. Accordingly, MDFA's claims should be dismissed under the doctrine of claim preclusion.

We can only assume that the MDFA would argue that ADPM is precluded from re-litigating amounts allegedly due under the Contract. *Res judicata* is a two way street, if ADPM is to be precluded from presenting Contract amounts it believes are due, the MDFA should be precluded from arguing ADPM's alleged breach of contract should provide for further economic relief - beyond the $44,620 already awarded to it.

### 4. ISSUE PRECLUSION: The MDFA Has Already Litigated Its HVAC Claims

For issue preclusion, because the parties to this proceeding and the DALA proceeding are the same, and a final judgment on the merits resulted from the DALA proceeding, the only factor that can be called into question is whether the DALA proceeding covered the HVAC issues now presented.

The MDFA's general argument in the DALA proceeding was that the HVAC coordination was not properly handled by ADPM. This "coordination" effort involved the development of a compilation drawing of the HVAC, plumbing and electrical designs, and for the installation of those systems, after review by the MDFA. The MDFA argued that these

---

[8] The timing of the Wessling and Comeau expert reports shows that the MDFA was aware of its HVAC concerns prior to the start of the DALA hearings.

"design coordination drawings" were not completed timely, and properly, resulting in deficient installation. This was the focus of the DALA proceedings. See Aff. of Hughes, ¶ 5 - Exhibit D at para. 26, 27, 41, 47, 54, and 78.

More specifically, in the MDFA's proposed findings of fact, it asked DALA to find that, "The HVAC drawings prepared by Allied were incomplete and incorrect."[9] Id. at Para. 41. Further, the MDFA asked DALA to find that the ". . . MDFA incurred additional costs from SMMA and Erland for reviewing, on multiple occasions, defective and incomplete design development and Coordination Drawings;. . . " Id. at Para. 78.

In the Complaint, the MDFA asserts: "Pursuant to the contract, Fluor, through Allied, furnished a design for the HVAC system;" "At various times after occupancy of the building, MDFA discovered deficiencies with the HVAC system in the building;" "Fluor has breached its contract by failing and refusing to correct its defective work;" and "Fluor was negligent in the design and installation of the HVAC and windows." See Complaint at paragraphs 18, 23, 32 and 41.

The MDFA has called into question the design, coordination and installation of the HVAC system in both proceedings. HVAC design, coordination and installation complaints were raised once from a defensive posture in the DALA proceeding and now are being raised as part of an affirmative claim. The MDFA cannot use the same defense, first as a shield, and then as a sword. Harlow Realty Co. v. Whiting, 308 Mass. 220, 225 (1941), citing Merriam v. Woodcock, 104 Mass. 326 (1870). The MDFA should be precluded from raising these HVAC design and construction issues twice, in two separate forums.

---

[9]  Allied Engineering has been brought in as a third party defendant in light of the MDFA's current allegation of design negligence.

**D. The MDFA's Claims are Untimely and Waived Under the Contract**

The Contract states at Article XXI - "Exclusive Remedies," as follows:

"The parties' rights, liabilities, responsibilities and remedies with respect to the Work, whether based upon contract, strict liability, tort (including negligence), or other legal theory, shall be exclusively those expressly set forth in this Agreement. To the extent waivers, releases and limitations on liability and on remedies expressed in this Agreement, then such waivers, releases and limitations shall apply even in the event of the fault, negligence, or strict liability of the party to be released or whose liability is limited and shall extend to the officers, directors, employees, agents, and related entities of such party."

The Contractual remedy to guard against defective work was a "Guaranty", Article XI,

which provides, in part, as follows:

"Should the Contractor's Work fail to meet [standards of care and diligence normally practiced] during the one (1) year period following completion of the Work and the issuance of a Certificate of Occupancy for the project, the Contractor shall within five (5) days after the receipt of written notice from MassDevelopment, at no cost to MassDevelopment, reperform its services to the extent reasonably necessary to make them comply with the foregoing standard(s). An additonal one (1) year warranty on the reperformed services shall commence upon completion of such reperformed services. . . Contractor shall, for the protection of MassDevelopment, demand from all vendors from which Contractor procures machines, equipment, materials and services guarantees with respect to such machines, equipment, materials and services, which shall be made available to MassDevelopment to the full extent of the terms thereof. Contractor's liability with respect to such machinery, equipment, materials and services shall include procuring guarantees from such vendors and enforcing such guarantees for the benefit of MassDevelopment. Contractor makes no other warranties or guarantees, express or implied, including any WARRANTY OF MERCHANTABILITY OR WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE."

The MDFA's first possible notice to ADPM of the claims raised here is by way of Mr.

Whelan's letter of September 6, 2002, issued more than one (1) year after the Certificate of

Occupancy. See Aff. of Hughes, ¶ 11 - Exhibit J. Mr. Whelan's letter does not provide proper

notice of all the alleged deficiencies contained within Mr. Comeau's or Mr. Wessling's expert reports, which are the subject matter of this current litigation. The subject matter of this litigation, at least with respect to HVAC issues, is closely aligned with what was asserted by the MDFA before DALA as a defense to paying ADPM its contract balance.

Pursuant to the exclusive remedies clause, the MDFA's claims fall outside the "guaranty" because they were untimely asserted and thus, cannot be maintained. At best, the MDFA can argue notice was provide on September 6, 2002 of the claims brought in this litigation, which is untimely under the contract, although we do not think that letter provides proper notice of the current set of claims. A comparison of Mr. Comeau's expert report with Mr. Whelan's letter illustrates this fact.

The MDFA cannot assert that its HVAC claims were latent defects, because they had full knowledge during construction and upon completion of the work of the systems provided.[10] The performance of the HVAC system, by its very nature, cannot be latent. However, it is immaterial as to whether or not the MDFA realized the HVAC system was not performing as it expected, because the MDFA had an obligation, if it wanted to rely upon the guarantee provided in the Contract, to inspect and/or evaluate the HVAC systems and timely assert a claim under the guarantee against ADPM to bring the systems in line with their expectations.

Not only are the MDFA's claims untimely, but the breadth is too great. The MDFA agreed to limit ADPM's exposure for performance issues to those allowed for under the vendor

---

[10] The MDFA's agents approved the louver, and sizing, for installation during the project. See Aff. of Hughes, ¶ 12 - Exhibit K. The sizing of air handler unit #2 was specified in the RFP at 10,000 CFM. Irrespective, ADPM's designer checked the sizing and concluded that a larger air handler unit was preferable, a 15,000 CFM unit. This was brought to the attention of the MDFA's agents on or about March 20, 2001. The MDFA's agents recommended to the MDFA that only a 12,000 CFM unit be utilized. See Aff. of Hughes, ¶ 13 - Exhibit L.

guarantees. The Contract, within Article XI states, "Contractor's liability with respect to such machinery, equipment, materials and services shall include procuring guarantees from such vendors and enforcing such guarantees for the benefit of MassDevelopment." ADPM is potentially liable to procure and enforce vendor guarantees, if timely asserted, not to guarantee their work itself.

The MDFA's claims are untimely and precluded from now being asserted by the exclusive remedies provision of the Contract.

**CONCLUSION**

Based on the foregoing, ADP Marshall, Inc. requests summary judgment in its favor on Plaintiff's claims. The MDFA's claims should have been asserted and/or were already litigated in their entirety before DALA and are now precluded. Alternatively, the MDFA's claims were not timely asserted under the guarantee and are lost.

Respectfully submitted,

DEFENDANTS,
ADP Marshall, Inc. and Fireman's Fund Insurance Company
By their attorneys,

Andrew J. Tine (BBO#633639)
Haese, LLC
70 Franklin Street, 9th Floor
Boston, MA 02110
(617) 428-0266 - Telephone
(617) 428-0276 - Fax

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the Defendants' Motion for Summary Judgment, Memorandum of Law in support thereof and the Affidavit of Tom Hughes, via United States Mail, postage prepaid, this 3s⁴ day of November, 2004 to all counsel of record.

Andrew J. Tine