UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS DEVELOPMENT FINANCE AGENCY<br>Plaintiff,<br><br>v.<br><br>ADP MARSHALL, INC., a FLUOR DANIEL COMPANY, and FIREMAN'S FUND INSURANCE COMPANY<br>Defendants. | C.A. No. 04 CV 10203 PBS |

ADP MARSHALL, INC.
    Plaintiff-in-Counterclaim,

v.

MASSACHUSETTS DEVELOPMENT FINANCE AGENCY
    Defendant-in-Counterclaim.

ADP MARSHALL, INC.
    Third Party Plaintiff,

v.

ALLIED CONSULTING ENGINEERING SERVICES, INC., ANDOVER CONTROLS CORPORATION, R&R WINDOW CONTRACTORS, INC., DELTA KEYSPAN, INC. n/k/a DELTA KEYSPAN, LLC, MADDISON ASSOCIATES, INC., UNITED STATES FIDELITY AND GUARANTY COMPANY, FIDELITY AND DEPOSIT COMPANY OF MARYLAND, NATIONAL GRANGE MUTUAL, INSURANCE COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY

-1-

| | |
|---|---|
| OF AMERICA, AMERICAN HOME ASSURANCE COMPANY, HARTFORD ROOFING COMPANY, INC. and SPAGNOLO/GISNESS & ASSOCIATES, INC.<br>    Third Party Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) |

## THIRD PARTY PLAINTIFF ADP MARSHALL, INC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO DELTA KEYSPAN, INC.

ADP Marshall, Inc. ("ADPM") respectfully submits this memorandum of law in support of its motion for summary judgment on Counts I, breach of contract, and V, indemnification and contribution, of the First Amended Third Party Complaint against Delta Keyspan, Inc. ("Delta").

## INTRODUCTION

On or about September 7, 2000, ADP Marshall, Inc. ("ADPM") and the Massachusetts Development Finance Agency ("MDFA") entered into a contract (the "Contract") for the construction of an Advanced Technology and Manufacturing Center in Fall River, Massachusetts (the "Project"). See Affidavit of Tom Hughes, ¶ 2. The Project was accepted as substantially complete on August 21, 2001. By letter dated September 6, 2002, William Whelan of Whelan Associates, LLC, an apparent agent for the MDFA, notified Robert Greetham of ADPM of concerns of the MDFA. See Affidavit of Tom Hughes, ¶ 7. Subsequently, numerous letters were exchanged and a meeting took place between the MDFA and ADPM to discuss the concerns expressed in the September 6, 2002 letter. ADPM finally responded that it would price the work and provide a proposal to complete same if the MDFA provided ADPM with a notice to proceed.

The MDFA did not respond to this request for a notice to proceed. The MDFA's last asserted position was that ADPM was obligated to perform the work under protest.

On or about November 18, 2002, ADPM forwarded Mr. Whelan's September 6, 2002 letter to Delta for response and action. See Affidavit of Tom Hughes, ¶ 8. On or about December 2, 2003, this lawsuit was filed against ADPM ("MDFA's Complaint"). On January 26, 2004, ADPM notified Delta of the MDFA's Complaint and requested indemnification since there were allegations concerning the HVAC installation. See Affidavit of Tom Hughes, ¶ 9. On or about June 2004, the MDFA provided ADPM with a copy of its HVAC expert's report dated April 9, 2003. See Affidavit of Tom Hughes, ¶ 10. Thereafter, ADPM provided a copy of the HVAC expert report to Delta's attorneys. The report alleges numerous concerns with the HVAC installation. Delta has failed to address the concerns raised in the MDFA's HVAC expert report to the satisfaction of the MDFA and ADPM.

## SUMMARY OF ARGUMENT

Count I of the MDFA's Complaint is a breach of contract claim against ADPM alleging deficiencies with the HVAC system installed by Delta for ADPM. Count III of the MDFA's Compliant is a negligence claim against ADPM, alleging that, "[ADPM] was negligent in the design and installation of the HVAC and windows." There is also a claim against ADPM's bond by the MDFA based upon these same performance based allegations.

On or about June 2004, the MDFA furnished ADPM with a copy of a report prepared by its HVAC consultant, which asserted numerous allegations of improper HVAC design and installation, not limited to: 1) HVAC air intake louver sizing; 2) plenum installation; 3) HVAC

air duct sizing; 4) HVAC air handler unit #2 performance; 5) area heating problems; and 6) heat recovery system design or installation issues. The MDFA's Complaint alone, with the allegations contained therein, suggests a claim against ADPM arising out of or relating to Delta's failure to comply with the terms of the Delta Agreement. The MDFA's HVAC report adds further support to this obvious conclusion.

The Delta Agreement at paragraph 8.1 states that, "To the fullest extent permitted by law, [Delta] hereby acknowledges and agrees that it shall indemnify, hold harmless, and defend, [ADPM], the [MDFA] . . . against all claims, damages, losses, and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of [Delta's] Work under this Subcontract, provided that any such claim, damage, loss or expense . . . (2) is alleged to have been caused in whole or in part by any negligent acts or omissions of [Delta] . . . or anyone for whose acts any of them may be liable." See Affidavit of Tom Hughes, ¶ 3. Paragraph 8.2 extends this obligation of indemnification to ADPM's surety, Fireman's Fund Insurance Company.

Delta was required to furnish and install, by way of example and not limited to, all sheetmetal, HVAC piping, all AHU's chillers, all heating coils, all H&V units, all fintube radiators, the complete glycol energy recovery system, all pumps, all VAV boxes, boilers, unit heaters, all exhaust fans and all exhaust ducting. See Affidavit of Tom Hughes, ¶ 4. Delta agreed, pursuant to paragraph 2.1 of the Delta Agreement, to perform the Subcontract Work in accordance with the Contract Documents, the Schedule of Documents and with all the skill and care consistent with the performance of such Work in the construction industry and according to usual construction industry practices. See Affidavit of Tom Hughes, ¶ 5.

The MDFA's claims relate to work installed by Delta, because a negligence claim is expressly asserted as to the HVAC installation. See MDFA Complaint, ¶ 41. Pursuant to the Delta Agreement, where a claim is asserted as a result of Delta's work, an absolute obligation of indemnity and defense arises. The allegation alone creates the obligation, not success on the merits.

ADPM now seeks to be held harmless, indemnification, defense, and reimbursement for attorney fees incurred, as it relates to Delta's performance.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when "there is no genuine issue of material fact and ... the moving party is entitled to summary judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986); Allstate Insurance Co. v. Reynolds, 43 Mass. App. Ct. 927, 928 (1997) (citing Community Natl. Bank v. Dawes, 369 Mass. 550, 553 (1976) and Massachusetts Hosp. Assn. v. Department of Pub. Welfare, 419 Mass. 644, 649; MASS. R. CIV. P. 56(c)). The non-moving party must go "beyond the pleadings ... and ... designate specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 323-324. The party opposing a motion for summary judgment must set forth substantial evidence supporting its position. Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986). "'A complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial.'" Kourouvacilis v. G.M. Corp., 410 Mass. 706, 711, (1991)(quoting Celotex Corp., 477 U.S. at 323-324).

## CONCISE STATEMENT OF MATERIAL FACTS

1. On or about January 19, 2001, ADPM and Delta Keyspan, Inc. ("Delta") entered into an agreement whereby Delta would install the HVAC system of the Project ("Delta Agreement"). See Affidavit of Tom Hughes, ¶ 3.

2. Delta was required to furnish and install, by way of example and not limited to, all sheetmetal, HVAC piping, all AHU's chillers, all heating coils, all H&V units, all fintube radiators, the complete glycol energy recovery system, all pumps, all VAV boxes, boilers, unit heaters, all exhaust fans and all exhaust ducting. See Affidavit of Tom Hughes, ¶ 4.

3. Delta agreed, pursuant to paragraph 2.1 of the Delta Agreement, to perform the Subcontract Work in accordance with the Contract Documents, the Schedule of Documents and with all the skill and care consistent with the performance of such Work in the construction industry and according to usual construction industry practices. See Affidavit of Tom Hughes, ¶ 5.

4. By letter dated September 6, 2002, William Whelan of Whelan Associates, LLC, an apparent agent for the MDFA, notified Robert Greetham of ADPM of concerns the MDFA had with the Project. See Affidavit of Tom Hughes, ¶ 7.

5. On January 26, 2004, ADPM notified Delta of the MDFA's Complaint and requested indemnification since there were allegations concerning the HVAC installation. See Affidavit of Tom Hughes, ¶ 9.

6. Many of the MDFA's concerns, raised in its Compliant, relate to the installation of the HVAC system, such work being performed by Delta pursuant to the Delta Agreement. See Affidavit of Tom Hughes, ¶ 11.

## ARGUMENT

The Delta Agreement at paragraph 8.1 and 8.2 provides that Delta must indemnify, defend and hold harmless ADP Marshall against all claims, damages, losses, and expenses, including but not limited to attorney's fees, resulting from Delta's performance under the Delta Agreement.

Indemnification clauses are enforceable under Massachusetts law because the allocation of risk by agreement does not conflict with public policy. Canal Elec. Co. v. Westinghouse Elec. Corp., 406 Mass. 369, 372, (1990); Minassian v. Ogden Suffolk Downs, Inc., 400 Mass. 490, 492 (1987). This is particularly so when the parties to an agreement are "sophisticated business entities." MacGlashing v. Dunlop Equip. Co., 89 F.3d 932, 939 (1st Cir. 1996) (quoting Canal Elec., 406 Mass. At 374; Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118, 123 (1986)). Risk allocation agreements are common in the construction industry and are widely regarded as a "reasonable accommodation" between the parties to a commercial agreement. MacGlashing, 89 F.3d at 939.

The MDFA alleges HVAC deficiencies and describes in its expert report concerns with the installation of the HVAC system (e.g. the exterior air intake louver is upside down and leaks water, the plenum is not constructed to the design detail and the installation shop drawings are missing). See Affidavit of Tom Hughes, ¶ 10 and 11. The contractual documentation is clear that Delta was responsible for the HVAC installation, from the air intake louver through the entire system and out to the exhaust/heat recovery system. Any HVAC installation claims are the responsibility of Delta. As such, Delta is responsible to ADPM, from both a defense and indemnification standpoint, for any allegations or claims resulting from its HVAC work.

The subject indemnity clauses are enforceable because they specifically hold Delta responsible only to the extent of its own performance. Looking beyond the contract, at common law, indemnification has been permitted where the person seeking indemnification did not join in the negligent act of another but was exposed to liability because of that negligent act. Rathbun v. Western Massachusetts Elec. Co. 479 N.E.2d 1383, 1385 (Mass. 1985). "The cause of action exists independently of statute, and whether or not contractual relations exist between the parties." Fireside Motors, Inc. v. Nissan Motor Corporation, 395 Mass. 366, 369-370 (1985). Even at common law, Delta is responsible for indemnification of ADPM for the MDFA's claims that arise out of Delta's performance.

Delta must defend and indemnify ADPM from the allegations of the Complaint. Further, Delta must reimburse ADPM for those attorney fees incurred in defending against the MDFA's claims that relate to its work and in enforcing this obligation of defense and indemnity. Accordingly, summary judgment should be granted in favor of ADPM on Counts I and V of its Third Party Claim against Delta.

## CONCLUSION

Based on the foregoing, ADPM requests summary judgment be granted in its favor, as against Delta, on Count I and V of its Third Party Complaint.

Respectfully submitted this 30th day of November 2004.

ADP MARSHALL, INC.,
By its attorneys,

_____
Andrew J. Tine, BBO#633639
Haese, LLC
70 Franklin Street, 9th Floor
Boston, MA 02110
(617) 428-0266

## CERTIFICATE OF SERVICE

I, Andrew J. Tine, hereby certify that I served a copy of ADPM's Motion for Summary Judgment, Memorandum in Support thereof and Affidavit of Tom Hughes by first class mail, postage pre-paid to all counsel of record this 30th day of November, 2003.

Andrew J. Tine