UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS DEVELOPMENT FINANCE AGENCY<br>Plaintiff,<br><br>v.<br><br>ADP MARSHALL, INC., a FLUOR DANIEL COMPANY, and FIREMAN'S FUND INSURANCE COMPANY<br>Defendants. | C.A. No. 04 CV 10203 PBS |
| ADP MARSHALL, INC.<br>Plaintiff-in-Counterclaim,<br><br>v.<br><br>MASSACHUSETTS DEVELOPMENT FINANCE AGENCY<br>Defendant-in-Counterclaim. | |
| ADP MARSHALL, INC.<br>Third Party Plaintiff,<br><br>v.<br><br>ALLIED CONSULTING ENGINEERING SERVICES, INC., ANDOVER CONTROLS CORPORATION, R&R WINDOW CONTRACTORS, INC., DELTA KEYSPAN, INC. n/k/a DELTA KEYSPAN, LLC, MADDISON ASSOCIATES, INC., UNITED STATES FIDELITY AND GUARANTY COMPANY, FIDELITY AND DEPOSIT COMPANY OF MARYLAND, NATIONAL GRANGE MUTUAL, INSURANCE COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY | |

```
OF AMERICA, AMERICAN HOME        )
ASSURANCE COMPANY,                )
HARTFORD ROOFING COMPANY, INC. )
and SPAGNOLO/GISNESS &           )
ASSOCIATES, INC.                  )
     Third Party Defendants.      )
_____ )
```

## THIRD PARTY PLAINTIFF ADP MARSHALL, INC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO ALLIED CONSULTING ENGINEERING SERVICES, INC.

ADP Marshall, Inc. ("ADPM") respectfully submit this memorandum of law in support of its motion for summary judgment on Counts IV, breach of contract, and VIII, indemnification and contribution, of the First Amended Third Party Complaint against Allied Consulting Engineering Services, Inc. ("Allied Engineering").

## INTRODUCTION

On or about September 7, 2000, ADP Marshall, Inc. ("ADPM") and the Massachusetts Development Finance Agency ("MDFA") entered into a contract (the "Contract") for the construction of an Advanced Technology and Manufacturing Center in Fall River, Massachusetts (the "Project"). See Affidavit of Tom Hughes, ¶ 1. The Project was accepted as substantially complete on August 21, 2001. By letter dated September 6, 2002, William Whelan of Whelan Associates, LLC, an apparent agent for the MDFA, notified Robert Greetham of ADPM of concerns of the MDFA. See Affidavit of Tom Hughes, ¶ 7. Subsequently, numerous letters were exchanged and a meeting took place between the MDFA and ADPM to discuss the concerns expressed in the September 6, 2002 letter. ADPM finally responded that it would price the work and provide a proposal to complete same if the MDFA provided ADPM with a notice to proceed.

The MDFA did not respond to this request for a notice to proceed. The MDFA's last asserted position was that ADPM was obligated to perform the work under protest.

On November 18, 2002, ADPM forwarded Mr. Whelan's September 6, 2002 letter to Allied Engineering for response and action. See Affidavit of Tom Hughes, ¶ 8. On or about December 2, 2003, this lawsuit was filed against ADPM ("MDFA's Complaint"). On January 26, 2004, ADPM notified Allied Engineering of the MDFA's Complaint and requested indemnification since there were allegations concerning the HVAC design. See Affidavit of Tom Hughes, ¶ 9. On or about June 2004, the MDFA provided ADPM with a copy of its HVAC expert's report dated April 9, 2003. See Affidavit of Tom Hughes, ¶ 10. Thereafter, ADPM provided a copy of the HVAC expert report to Allied Engineering's counsel. The report alleges numerous concerns with the HVAC design. Allied Engineering has failed to address the concerns raised in the MDFA's HVAC expert report to the satisfaction of the MDFA and ADPM.

## SUMMARY OF ARGUMENT

Count I of the MDFA's Complaint is a breach of contract claim against ADPM alleging that Allied Engineering designed the HVAC system for ADPM, that ADPM installed same pursuant to that design, and that the system is deficient. Count III of the MDFA's Compliant is a negligence claim against ADPM, alleging that, "[ADPM] was negligent in the design and installation of the HVAC and windows." There is also a claim against ADPM's bond by the MDFA based upon these same performance based allegations.

On or about June 2004, the MDFA furnished ADPM with a copy of a report prepared by its HVAC consultant, which asserted numerous allegations of improper HVAC design and installation, not limited to: 1) HVAC air intake louver sizing; 2) HVAC air duct sizing; 3) HVAC air handler unit #2 sizing; 4) area heating problems; and 5) heat recovery system design issues. The MDFA's Complaint alone, with the allegations contained therein, suggests a claim against ADPM arising out of or relating to Allied Engineering's failure to comply with the terms of the Allied Consulting Agreement. The MDFA's HVAC report adds further support to this obvious conclusion.

The Allied Consulting Agreement at paragraph 7.2 provides that Allied Engineering "shall indemnify and hold each of the Indemnified Parties harmless from and against any claims, demands, causes of actions, damages, liabilities, losses, costs and expenses, including reasonable attorneys' fees, arising out of or relating to:

. . .

> 7.2.3  Failure by [Allied Engineering] to comply with any applicable law, regulation, or statute, or with the terms of this Agreement."

Allied Engineering was required to "perform all of the design and related Services that are specified or reasonably inferable from the requirements set forth in the Agreement Documents, including Attachment "A" and this Article 2." See Affidavit of Tom Hughes, ¶ 4. Attachment "A" to the Allied Consulting Agreement is entitled "Scope of Work" and further describes Allied Engineering's contractual obligations. It states that "[Allied Engineering] will provide HVAC Engineering Design Services on a Lump Sum Basis for the Project."

Allied Engineering agreed that its performance would be "in accordance with the highest prevailing standards of professional care for nationally recognized architects and engineering professionals regularly engaged in the design of state of the art Project described herein." See Affidavit of Tom Hughes, ¶ 5. Paragraph 3.1 of the Allied Consulting Agreement goes on to state that "Notwithstanding any review, approval, acceptance, or payment for any and all of [Allied Engineering's] Services by [ADPM] or termination of this Agreement, [Allied Engineering] shall remain responsible for the professional and technical accuracy of all of the [Allied Engineering's] Services and deliverables in meeting the requirements described in this Consultant Agreement and the Prime Agreement."

The "Indemnified Parties," as defined by the Allied Consulting Agreement in paragraph 7.1, are ADPM and the MDFA. Further, in addition to the obligation of indemnity, Allied Engineering has a duty, pursuant to paragraph 7.3, to reimburse any attorneys' fees and expenses incurred by ADPM and the MDFA to enforce Allied Engineering's indemnity obligations.

ADPM now seeks indemnification and reimbursement for attorney fees incurred, as it relates to Allied Engineering's performance.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when "there is no genuine issue of material fact and ... the moving party is entitled to summary judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986); Allstate Insurance Co. v. Reynolds, 43 Mass. App. Ct. 927, 928 (1997) (citing Community Natl. Bank v. Dawes, 369 Mass. 550, 553 (1976) and Massachusetts Hosp. Assn. v. Department of Pub. Welfare, 419 Mass. 644, 649; MASS. R. CIV.

P. 56(c)). The non-moving party must go "beyond the pleadings ... and ... designate specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 323-324. The party opposing a motion for summary judgment must set forth substantial evidence supporting its position. Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986). "'A complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial.'" Kourouvacilis v. G.M. Corp., 410 Mass. 706, 711, (1991)(quoting Celotex Corp., 477 U.S. at 323-324).

## CONCISE STATEMENT OF MATERIAL FACTS

1. On or about September 7, 2000, ADPM and the MDFA entered into a Contract for the construction of an Advanced Technology and Manufacturing Center in Fall River, Massachusetts, the Project. See Affidavit of Tom Hughes, ¶ 2.

2. On or about November 16, 2000, ADPM and Allied Engineering entered into an agreement whereby Allied Engineering would render professional design services for the HVAC system of the Project ("Allied Consulting Agreement"). The parties amended the agreement pursuant to Amendment No. 1. See Affidavit of Tom Hughes, ¶ 3.

3. Allied Engineering rendered professional design services for the HVAC system for the Project, not limited to, an evaluation of air handling unit sizing, air duct sizing, pump sizing for heat distribution, and heat recovery system design. See Affidavit of Tom Hughes, ¶ 6.

4. ADPM provided notice to Allied Engineering of the MDFA's concerns with respect to the HVAC design on November 18, 2002 and again on January 26, 2004. See Affidavit of Tom Hughes, ¶ 8 and 9.

5. Many of the MDFA's concerns, raised in its Compliant, relate to the design of the HVAC system, such work being performed by Allied Engineering pursuant to the Allied Consulting Agreement. See Affidavit of Tom Hughes, ¶ 11.

6. ADPM has requested, and Allied Engineering has failed to offer or provide, defense, indemnification and reimbursement of attorney fees, as it relates to the MDFA's HVAC design concerns. See Affidavit of Tom Hughes, ¶ 12.

**ARGUMENT**

The Allied Consulting Agreement at paragraph 7.2 provides that Allied Engineering must indemnify and hold harmless ADP Marshall against all claims, damages, losses, and expenses, including but not limited to attorney's fees, resulting from Allied Engineering's failure to perform under the Allied Consulting Agreement. Paragraph 3.1 of the Allied Consulting Agreement makes Allied Engineering responsible for the professional and technical accuracy of all of its services and deliverables in meeting the requirements described in the Allied Consultant Agreement and the Contract.

Indemnification clauses are enforceable under Massachusetts law because the allocation of risk by agreement does not conflict with public policy. Canal Elec. Co. v. Westinghouse Elec. Corp., 406 Mass. 369, 372, (1990); Minassian v. Ogden Suffolk Downs, Inc., 400 Mass. 490, 492 (1987). This is particularly so when the parties to an agreement are "sophisticated business

entities." MacGlashing v. Dunlop Equip. Co., 89 F.3d 932, 939 (1st Cir. 1996) (quoting Canal Elec., 406 Mass. At 374; Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118, 123 (1986)). Risk allocation agreements are common in the construction industry and are widely regarded as a "reasonable accommodation" between the parties to a commercial agreement. MacGlashing, 89 F.3d at 939.

The MDFA alleges HVAC design concerns and expressly identifies Allied Engineering as the party responsible for designing the systems that are allegedly deficient. The contractual documentation supports this conclusion: that Allied Engineering was responsible for the design of the HVAC system for the Project. As such, Allied Engineering is responsible to ADPM, from both a defense and indemnification standpoint, for any alleged performance issues resulting from the design of the HVAC system.

The subject indemnity clauses are enforceable because they specifically hold Allied Engineering responsible only to the extent of its own performance. Looking beyond the contract, at common law, indemnification has been permitted where the person seeking indemnification did not join in the negligent act of another but was exposed to liability because of that negligent act. Rathbun v. Western Massachusetts Elec. Co. 479 N.E.2d 1383, 1385 (Mass. 1985). "The cause of action exists independently of statute, and whether or not contractual relations exist between the parties." Fireside Motors, Inc. v. Nissan Motor Corporation, 395 Mass. 366, 369-370 (1985). Even at common law, Allied Engineering is responsible for indemnification of ADPM for the MDFA's claims that arise out of its performance.

Allied Engineering must indemnify ADPM from the allegations of the Complaint. Further, Allied Engineering must reimburse ADPM for those attorney fees incurred in enforcing

this obligation of indemnity. Accordingly, summary judgment should be granted to ADPM on Counts IV and VIII of its Third Party Claim against Allied Engineering.

## CONCLUSION

Based on the foregoing, ADPM requests summary judgment be granted in its favor, as against Allied Engineering, on Count IV and VIII of its Third Party Complaint.

Respectfully submitted this 30th day of November 2004.

ADP MARSHALL, INC.,
By its attorneys,

Andrew J. Tine, BBO#633639
Haese, LLC
70 Franklin Street, 9th Floor
Boston, MA 02110
(617) 428-0266

## CERTIFICATE OF SERVICE

I, Andrew J. Tine, hereby certify that I served a copy of ADPM's Motion for Summary Judgment, Memorandum in Support thereof and Affidavit of Tom Hughes by first class mail, postage pre-paid to all counsel of record this 30th day of November, 2003.

_____
Andrew J. Tine