UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS DEVELOPMENT FINANCE AGENCY <br>     Plaintiff <br><br>     v. <br><br> ADP MARSHALL, INC., a FLUOR DANIEL COMPANY, and FIREMAN'S FUND INSURANCE COMPANY <br> Defendants | C.A. No.: CV 10203 PBS |

MASSACHUSETTS DEVELOPMENT
FINANCE AGENCY
    Plaintiff
    v.

ADP MARSHALL, INC.
    Plaintiff in Counterclaim

    v.

MASSACHUSETTS DEVELOPMENT
FINANCE AGENCY
    Defendant in Counterclaim

ADP Marshall, Inc.
    Third Party Plaintiff

    v.

ALLIED CONSULTING ENGINEERING
SERVICES, INC. ANDOVER CONTROLS
CORPORATION, R & R WINDOW
CONTRACTORS, INC., AND DELTA
KEYSPAN, INC. N/K/A DELTA
KEYSPAN, LLC, MADDISON
ASSOCIATES, INC., UNITED STATES
FIDELITY AND GUARANTY COMPANY
FIDELITY AND DEPOSIT COMPANY
OF MARYLAND, NATIONAL GRANGE
MUTUAL INSURANCE COMPANY,
TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA, AMERICAN
HOME ASSURANCE COMPANY,
HARTFORD ROOFING COMPANY, INC.,
and SPAGNOLO/GISNESS &
ASSOCIATES, INC.
    Third Party Defendants.

**OPPOSITION OF PLAINTIFF, MASSACHUSETTS DEVELOPMENT FINANCE AGENCY, TO DEFENDANT'S, ADP MARSHALL, INC.'S, AND FIREMAN'S FUND INSURANCE COMPANY'S, MOTION FOR SUMMARY JUDGMENT**

## Introduction

The Plaintiff, Massachusetts Development Finance Agency (hereinafter "MDFA") is a public instrumentality organized and existing under the provisions of M.G.L., c. 23G.  MDFA undertook to build a project in Fall River, an approximately 60,000 s.f. laboratory and research center (hereinafter the "Project").  MDFA is subject to the provisions of G.L.c.149 §§44A-H with respect to public building projects.  Under the provisions of c.149 §§41(E)(4), MDFA utilized the so-called "modular procurement" process.  Generally stated, a modular procurement process is a design/build process, and selection of the contractor is done on a "best value" basis.

MDFA issued a Request for Proposals (hereinafter "RFP") for the Project. Pursuant to the RFP[1], the defendant, ADP Marshall, Inc., a Fluor Daniel Company (hereinafter "ADP")[2] submitted a proposal with Spagnolo Gisness Associates (hereinafter "SGA") as the architect, and Allied Consulting Engineering Services, Inc. (hereinafter "Allied") as the HVAC designer.

Since the opening of the Project, there have been numerous problems with the HVAC system and water leaks.  MDFA made numerous demands of ADP to correct these deficiencies and ADP has refused to correct said deficiencies.  After ADP refused to correct these deficiencies, MDFA commenced

---

[1] Attached Exhibits are identified and referred to  in MDFA's Concise Statement of Facts, infra, and are true and accurate copies of the same.
[2] Throughout this brief the term ADP shall include Defendant, Fireman's Fund Insurance Company.

this action alleging breach of contract, violation of c. 93A, negligence, and, it has asserted a claim on the performance bond of ADP.

During the construction of the Project, ADP failed to provide coordination drawings as required by the contract. Coordination drawings depict the manner in which various components of the work come together and indicate compliance of the design with the intent of the RFP. MDFA had to procure additional architectural and engineering services to do "field coordination." At the closeout of the Project MDFA backcharged ADP $50,000.00. The backcharge for coordination drawings had nothing to do with the claims in this case. ADP elected to bring the dispute over the backcharge for coordination drawings before the Division of Administrative Law Appeals (hereinafter "DALA") for an administrative hearing under M.G.L. c. 30 §39Q. DALA conducted a hearing on the $50,000.00 backcharge for "coordination drawings" and awarded MDFA $44,620.00. ADP chose not to bring the issues in this case before DALA.

## Concise Statement of Facts[3]

1. MDFA undertook to develop a research and laboratory center in Fall River, Massachusetts (hereinafter "the Project"), a 60,000 square foot laboratory and research center. Complaint ¶5.

2. The Project was developed in conjunction with the University of Massachusetts, Dartmouth (hereinafter "UMASS Dartmouth") which was to be a tenant in the building and the City of Fall River, Massachusetts. Complaint ¶6.

---

[3] Pursuant to Local Rule 56.1, the following concise statement of facts is submitted in opposition to Defendant's, ADP's, Concise Statement of Material Facts.

3. In light of the complexity of the Project, MDFA decided to use what is known as a "modular procurement process".[4] The modular procurement process would allow the design of the facility to meet detailed requirements by ensuring the contractor would follow a detailed schematic program for the facility the contractor would design and build. Complaint ¶¶8,9

4. Under the modular procurement process, a public awarding authority engages a designer to prepare a "program" for the building to be constructed. Complaint ¶9

5. A "program" depicts the requirements for the building, but it is not a design. Complaint ¶9

6. ADP engaged the architectural firm of Spagnolo Gisness & Associates (hereinafter "SGA") to provide architectural design services for the Project. Complaint ¶16

7. ADP engaged Allied Consulting Engineering Services, Inc. ("Allied") to provide engineering design services for the HVAC (Heating, Ventilation and Air Conditioning) portion of the Project. Complaint ¶17

8. ADP submitted its proposal and, as the low bidder, it was awarded the contract. Complaint ¶15

9. On September 17, 2000, MDFA and ADP entered into a written contract for the design and construction of the Project (hereinafter referred to as the "Contract"). Under the terms of the Contract substantial completion was to occur

---

[4] As a public instrumentality, MDFA is subject to the provisions of M.G.L. c. 149 §§44A-J, with respect to public building projects.

by the fall of 2001; for the start of the academic year.  A true and accurate copy of the Contract is attached hereto as Exhibit A.

10.  Fireman's Fund Insurance Company, as surety, issued a performance bond, number 11133541802, for the Project, with ADP as principal and MDFA as obligee.[5]  Complaint ¶14

11.  The Contract called for four phases: (1)design phase ; (2)design development phase; (3)construction documents phase and (4)construction phase.  Exhibit A, Contract, page 4, ¶1.

12.  Pursuant to the contract, ADP, through Allied, furnished a design for the HVAC system.  Complaint ¶18

13.  The facility, as designed, contained three sections; an east wing, a west wing, each with two stories, and a central core or knuckle area with a lobby, a first floor conference center, and second floor administrative offices area.  The third floor penthouse area housed mechanical equipment.  Complaint ¶16-19.

14.  ADP proceeded to build the Project pursuant to the design furnished by its architect SGA, and its HVAC engineer, Allied.

15.  On August 21, 2001, a Certificate of Substantial Completion was issued on the Project.  A true and accurate copy of the Certificate of Substantial Completion is attached hereto as Exhibit B.

16.  Whelan Associates LLC (hereinafter "Whelan"), through Mr. William M. Whelan, on behalf of MDFA served as Property Manager on the Project

---

[5] The Defendant, Fireman's Fund is a corporation, transacting business as a surety in the Commonwealth of Massachusetts and, having a usual place of business at One Market, Spear Tower, San Francisco, California.

beginning on December 26, 2001.  Affidavit of William M. Whelan, (hereinafter "Whelan Affidavit")[6] ¶3.

17.  Immediately after occupancy, Whelan began to identify deficiencies in the work performed by ADP on the Project which needed correction.  Among other items, Whelan encountered leaking in several windows on each level of the tenant spaces and the curtain wall in the knuckle of the building and identified significant problems with the HVAC System and hot water heating system. Whelan Affidavit ¶4.

18.  MDFA made repeated demands on ADP to repair the deficiencies in the Project but ADP has failed and refused to correct the deficiencies.  Whelan Affidavit ¶¶7-15.

19.  On January 8, 2002, Mr. William M. Whelan faxed correspondence to Mr. James Maguire, the Mechanical Project Engineer for ADP on the Project.  A true and accurate copy of this document is attached hereto as Exhibit C; Whelan Affidavit ¶5.

20.  The document faxed to Mr. Maguire on January 8, 2002, was entitled "Mechanical System Issues list" and consisted of a detailed statement of the defective work that existed on the Project as identified by Whelan Associates LLC at that time. Whelan Affidavit ¶6; Exhibit C.

21.  Despite this initial written notice of the defective work ADP refused to correct the deficiencies.  Whelan Affidavit ¶¶6,15.

22.  On July 29, 2002, Mr. Neal Hannon[7], of the Hannon Company, notified ADP of the outstanding issues on the Project.  This memorandum was addressed to

---

[6] Affidavit of William M. Whelan is attached hereto as Exhibit N.

Bob Greetham, Project Manager for ADP Marshall, and entitled "ADP Marshall

Warranty Issues". A true and accurate copy of this document is attached hereto

as Exhibit D; Whelan Affidavit ¶8.

23. The July 29, 2002 memorandum sets forth problems encountered with

respect to the HVAC system. The following defects were highlighted in the

memorandum:

> Low temperature of heating hot water in the east wing
> Inability to get adequate cooling in the central core (knuckle)(i.e.:
> conference room overheating)
> Question regarding winter cooling of small heat load areas. Exhibit
> D; Whelan Affidavit ¶9.

24. On August 5, 2002, MDFA, through Mr. Whelan, took part in a follow up

meeting with Mr. Robert Greetham with regard to outstanding issues MDFA

faced at the Project. At this meeting, the following deficiencies were discussed:

> Life/Safety Sprinkler System leak in front of first floor elevator door,
> which stains the floor on a regular basis.
>
> Front and rear lobby doors have multiple screws missing on hinges
> and appear to not be aligned properly.
>
> The outstanding $96.00 bill for door repair that was necessary
> because R&R Window refused to make a service call.
>
> Several lab exhaust fans remain disconnected and inoperative.
>
> The HVAC box in Room 111-1 is emanating a very loud vibrating
> noise. An Andover tech troubleshot the box and advised that a
> starter relay requires replacing.
>
> Heating hot water appears to not be circulating properly. The return
> temp of 170 degrees is being met at the boiler return line; however,
> the supply to the loading dock fan coils and the east wing convector
> units was measured at a mere 110 degrees. Due to this issue, the
> loading dock is very cold in the winter and the east wing regularly
> gets down to 40 degrees.

---

[7] Mr. Hannon served as the Project Manager for MDFA.

The O&M for Ademco burglar alarm panel.

Window leaks.

Conference rooms overheating when in use.

As-builts on CAD for all trades to be delivered to MassDevelopment.

Supply Fan for AHU2 runs at 100% because the system cannot maintain 1.5" of W.C. static pressure.

Chiller trips out when demand for chilled water is very low in the winter.

Reception desk open strip missing.

Electrical panels are mislabeled throughout building. Room numbers are wrong.

End of the east wing has no HVAC supply air east of the fire doors, the end of the hallway gets very warm and stagnant in the summer.

A drip edge needs to be installed over West stairwell exit door.

Shipping & receiving dumpster door leaks water during rainstorms

Whelan Affidavit ¶10.

25. On September 6, 2002, via facsimile and mailed hard copy, and at the

direction of MDFA, Mr. Whelan sent a follow-up letter to Mr. Greetham regarding

the items that had not been repaired.  This letter specifically listed what

outstanding items remained and what remedial measures had been completed

since the August 5, 2002 meeting. A true and accurate copy of the September 6,

2002 letter is attached hereto as Exhibit E; Whelan Affidavit ¶13.

26. Following this, follow up conversations with Mr. Greetham and a letter from

ADP, signed by Mr. Greetham, to Mr. Whelan, dated September 25, 2002,

revealed that ADP was unwilling to cure several of the remaining deficiencies. In fact, ADP refused to attend an October 16, 2002 site meeting which was intended to be an attempt to resolve the pending disputes. Whelan Affidavit ¶14.

27. Despite repeated demands to repair the defective work, ADP has refused to cure the deficiencies. Whelan Affidavit ¶¶14,15.

28. Under the Contract, ADP, as the design/builder, was required to prepare coordination drawings during construction. Coordination drawings depict the manner in which various components of the work such as electrical, HVAC, and fire protection come together. Additionally, coordination drawings indicate compliance of the design with the intent of the RFP. *See* Exhibit F.

29. ADP failed to provide coordination drawings as required by the terms of the Contract and, as a result, MDFA engaged architects and engineers to provide coordination drawings in the field. MDFA withheld $50,000.00 from ADP in order to cover this added expense. The $50,000.00 amount was a good faith estimate on the part of MDFA. *See* Exhibit F.

30. ADP challenged the backcharge for coordination drawings by availing itself of its right to file an administrative claim before the Commonwealth of Massachusetts Division of Administrative Law Appeals (hereinafter "DALA"), pursuant to M.G.L. c. 30 §39Q, in lieu of suing in Superior Court. *See* Exhibit F.

31. On June 5, 2002 ADP requested an adjudicatory proceeding before DALA seeking only an adjudication of the merits of MDFA's backcharge of $50,000.00 for lack of coordination drawings under the provisions of M.G.L. c. 30 §39Q. ADP specifically requested DALA

> determine whether the aforementioned backcharge is invalid, [i]f DALA determines that a backcharge is justified, [ADP] seeks a determination by DALA of the proper amount of the backcharge. A true and accurate copy of ADP's Petition is attached hereto as Exhibit F.

32. MDFA filed an answer to ADP's petition citing specifically that the dispute "arises out of the failure of ADP to provide Coordination Drawings for several components of work, including HVAC, Fire Protection, Electrical and Plumbing..." A true and accurate copy of MDFA's Answer to ADP's Petition is attached hereto as Exhibit G.

33. Administrative hearings were conducted in front of DALA in December 2002 and April 2003 regarding only an adjudication of the merits of MDFA's backcharge under the provisions of M. G.L. c. 30 §39Q. On November 20, 2003, the Administrative Magistrate, Sarah H. Luick, Esq., found that a backcharge of $44,620.00 had been proven. A true and accurate copy of the DALA Decision is attached hereto as Exhibit H.

34. On December 19, 2003, ADP filed a Motion for Clarification/Reconsideration of the DALA decision seeking to determine whether MDFA was ordered to pay ADP the sum of $5,380.00 since the original amount of the backcharge was $50,000.00. A true and accurate copy of the Motion for Clarification/Reconsideration is attached hereto as Exhibit I.

35. On December 23, 2003, MDFA filed an opposition to ADP's motion challenging ADP's assertion that DALA has jurisdiction to award the balance under the terms of the Contract. A true and accurate copy of MDFA's Opposition is attached hereto as Exhibit J.

36. On January 12, 2004, Magistrate Luick denied ADP's motion holding, in part,

> The amount proven entitled to is $44,260. <u>That is all</u>. DALA cannot order that ADPM receive the difference from $50,000 of $5,380, since that it is <u>not within the Section 39Q jurisdiction no matter how ADPM contends it presented its claim</u>. <u>When all disputes concerning this project have ended, including the non-section 39Q claims</u>, the amount that MDFA can take as credit for the coordination drawings dispute presented at the proceeding, is $44,260."[8]  A true and accurate copy of DALA's Decision on ADP's Motion for Clarification/Reconsideration is attached hereto as Exhibit K.

37. The $5,380.00 amount ($50,000.00 less the $44,260.00) to be used as a credit applied to the pending resolution of on-going <u>non-§39Q</u> disputes.

## ARGUMENT

## I.    M.G.L. c. 30 §39Q IS AN OPTIONAL ADMINISTRATIVE REMEDY AVAILABLE ONLY TO CONTRACTORS

ADP misconstrues the jurisdictional limitations of Massachusetts General Laws chapter 30 §39Q.  Section 39Q provides a limited administrative remedy  to contractors seeking an expedited resolution of a dispute regarding "changes in the contract, interpretation of the contract, and payment for extra work or materials ..."  Stanley A. Martin & James J. Myers, <u>Construction Contract Remedies and Damages</u>, 76 Mass. L. Rev. 170, 184 (1991).  It is a right afforded exclusively to a general contractor under limited circumstances and available <u>only</u> to general contractors and <u>not</u> awarding authorities. The "commonwealth gives the <u>contractor</u> the option to resolve contractual disputes with the commonwealth through administrative proceedings in lieu of judicial

---

[8] On December 18, 2003, MDFA filed this action in the Suffolk County Superior Court. On January 28, 2004, ADP removed this matter to this Court

proceedings." James J. Myers, <u>Massachusetts Construction Law</u>, §15-3[a][2] (2004)[9] (emphasis added).

A contractor may avail itself of this specific administrative remedy for some but not all disputes. The statute is specific as to the steps a contractor must take in order to avail itself of this expedited administrative remedy. First, the general contractor must submit the dispute to the state agency. Specifically, section 1(a) of c. 30 §39Q, states:

> Written notice of the matter in dispute shall be submitted promptly by the <u>claimant to the chief executive official of the state agency which awarded the contract</u> or his designee… (emphasis added).

Second, the chief executive official of the state agency must act on the claim. Section 1(b) of c. 30 §39Q, states:

> Within thirty days of submission of the dispute to <u>the chief executive official of the state agency or his designee, he shall issue a written decision stating the reasons therefor</u>, and shall notify the parties of their right of appeal under this section. If the <u>official or his designee is unable to issue a decision</u> within thirty days, he shall notify the parties to the dispute in writing of the reasons why a decision cannot be issued within thirty days and of the date by which the decision shall issue.

Third, if the claim is denied in whole, or in part, the contractor may file a claim in DALA or in Court. If the contractor elects to file the claim in DALA, it is entitled to an administrative hearing on an expedited basis, as opposed to court. Section 1(c) of c. 30 §39Q, states:

> Within twenty-one calendar days of the receipt of a written decision or of the failure to issue a decision as stated in the preceding subparagraph, any <u>aggrieved party may file a notice of claim for an adjudicatory hearing with the division of hearing officers or the aggrieved party may file an action directly in a court of competent jurisdiction</u>… (emphasis added).

---

[9] Attached hereto as Exhibit M is a true and accurate copy of §15-3[a][2] of the treatise.

The statute makes it clear that it is the contractor and <u>not</u> the awarding authority that can seek relief under c. 30 §39Q. MDFA as the awarding authority did not have a remedy available to it under c. 30 §39Q. For example, clearly MDFA, as the state agency, can not submit written notice of the claim to itself. Additionally, certainly MDFA, as the state agency, is not required to issue a written decision to itself. These examples make it abundantly clear that the statute can not be read any other way; that is, c. 30 §39Q is a unique statutory remedy drafted for the benefit of contractors and providing contractors with the option of seeking expedited relief in an administrative forum.

Moreover, the expedited administrative remedy is at the option of the contractor. It need not bring all disputes to DALA. A contractor can pick and choose what claim it wishes to assert in front of DALA. Chapter 30 §39Q specifically addresses this issue by requiring the contractor to continue the work under the contract pending resolution of the dispute submitted to DALA.[10]

ADP chose to bring the $50,000.00 backcharge for coordination drawings to DALA. Notably, ADP did not avail itself of §39Q with respect to the claims in this case.[11] ADP's petition to DALA is expressly limited to the backcharge of $50,000.00 for coordination drawings. ADP's petition, stated in part, as follows:

> Therefore, in accordance with the contract between the parties and M.G.L. c. 30 §39Q, ADP Marshall seeks an adjudicatory hearing from the Division of Administrative Law Appeals, ("DALA"), in order to determine whether the aforementioned <u>backcharge</u> is invalid. If DALA determines that the <u>backcharge</u> is justified, ADPM seeks a

---

[10] M.G.L. c. 30 §39Q specifically states, "Any disputed order, decision or action by the agency or its authorized representative shall be fully performed or complied with pending resolution of the dispute."
[11] This is not surprising considering ADP lost its case at DALA, and, most likely, did not want to get a repeat performance.

> determination by DALA of the proper amount of the backcharge."
> (emphasis added).  Exhibit F, Pages 2-3.

MDFA responded to ADP's petition and asserted the following:

> This dispute arises out of the failure of ADP to provide Coordination
> Drawings for several components of work, including, HVAC, Fire
> Protection, Electrical and Plumbing as required the specifications
> [of the Contract].  Exhibit G, Pages 1-2.

Additionally, it was clear that the only issue before DALA was that of the

coordination drawings and nothing else.  In the Decision issued by DALA,

Magistrate Luick stated, in part,

> Pursuant to G.L. c. 30, §39Q, the Petitioner, A.D.P. Marshall ...
> filed an appeal on the inaction of [MDFA's] failure to respond to its
> claim to be paid in full according to the terms of the Contract they
> had, and not subject to a backcharge taken by MDFA concerning
> inadequate and incomplete coordination drawings.
> Exhibit H, Page 1.

Further, in its Findings of Fact, DALA found,

> These are new totals for the backcharge for lack of adequate and
> no coordination drawings over the initial $50,000.00 estimate.  The
> new total of $44,620.00, reflects a good faith effort to narrow down
> with adequate precision, the reasonably unanticipated costs for this
> issue incurred by [ADP].  Exhibit H, Page 24, ¶58.

> [ADP] has filed an appeal with DALA pursuant to G.L. c. 30, §39Q,
> based on the inaction of the MDFA to respond to its request for
> reconsideration of the backcharge.  Exhibit H, Page 24 ¶59.

As is clear in ADP's petition, MDFA's response, and DALA's decision and

Findings of Fact, the sole issue brought before DALA was the validity of the

backcharge as it relates to the coordination drawings, that is all. Nowhere within

ADP's petition does it seek other relief nor was other relief ever brought by ADP

before DALA.  In fact, had ADP included a claim for contract balances it would

have exceeded the jurisdiction of M.G.L. c. 30 §39Q.

14

Not only were the coordination drawings the only dispute which ADP

brought before DALA but during the administrative hearing Attorney Tine,

counsel for ADP, stipulated that other disputes existed which were not before

DALA. In a discussion, on the record, between counsel for ADP, counsel for

MDFA and the Magistrate, this issue was addressed. As a witness for ADP was

veering outside of the coordination drawings issue, the following exchange

occurred:

> Defense Atty: [counsel for MDFA]: I want to – I'm going to object,
> because this is well beyond the scope of this particular issue.
> There are other disputes between MDFA and ADP Marshall –
> Clerk-Magistrate: No doubt.
> Defense Atty: - and there is documentation back and forth. I don't
> think that's before this magistrate.
> Clerk-Magistrate: Well, what I'd look to see, given that caution that
> counsel has –
> Mr. Tine: [counsel for ADP] We believe it's beyond the scope of this
> proceeding –
> Clerk-Magistrate: Okay.
> Mr. Tine: - but I anticipated from counsel's opening, that he was
> claiming that the job was not completed or finished or accepted.
> And I'm trying to get from this witness whether there's any directive
> to do anything.
> Clerk-Magistrate: Okay, well, what I'd say is, does any of this that
> you've been testifying about just now in his question have anything
> to do, in your view, with coordination issues?
> Mr. Greetham [Witness]: This list that we just went through?
> …
> Clerk-Magistrate: Much like you did with the punch list here?
> Mr. Greetham: Yeah.
> Clerk-Magistrate: Okay.
> Mr. Tine: I don't believe it's a subject of this appeal, but-
> …
> Mr. Tine: - if counsel have an agreement that it's not a subject of
> this appeal and won't be raised, I won't raise it.
> …
> Defense Atty: But I'd like to move to strike his testimony on this
> issue. Otherwise I've got to –
> Clerk-Magistrate: Well, I'm not sure I got much – there very well
> may be some matters left between the parties that wouldn't – in the

whole full, you know, contract between the parties here that has nothing to do with the coordination drawings issue, and that's fine with me. I don't really care. <u>To me, the issue is not whether the whole contract is completely fine and everybody's walking away with a handshake. It's just what has to do with this coordination issue. I think that's what both parties have told me, and I'm fine with that.</u> And my only question was to clarify whether our witness had any sense of whether anything on the list of items, which you've done that you felt the ones on it that you owned, had to do with coordination issues. And you just don't know, because it's not before you.

…

Clerk-Magistrate: … I'm, certainly not trying to get beyond the scope of what's at issue between the parties –
Defense Atty: None of our backcharges -
Clerk-Magistrate: - no reason to –
Defense Atty: - relate to the current issues outstanding between the parties. None of the backcharges relate to those issues. There may be issues regarding whether the work was properly coordinated, but none of these backcharges in the dispute before the magistrate relate to that.

…

Defense Atty:  Let me say, in those outstanding issues
Clerk-Magistrate: Yeah.
Defense Atty:  Which are not before this hearing.
Clerk-Magistrate: Which is what he's talking about, okay.
Defense Atty:  -there may be issues relating to coordination.
Clerk-Magistrate: Yeah.
Defense Atty:  But none of these back charges which we're currently litigating.

…

Clerk-Magistrate: Okay, well, then, I –sounds like we should–that's a stipulation and we should-

…

Clerk-Magistrate: Keep them outside the scope of the hearing.
Mr. Tine:  Can I try to understand it?
Clerk-Magistrate: Yeah.
Mr. Tine:  So what counsel is saying is that any of these other issues that were brought up after the job was-after this punch list-
Clerk-Magistrate: Right.
Mr. Tine:  -those do not form the basis of any of the monies that they are trying to withhold today.
Defense Atty:  Right.  I don't want to say that there are no coordination issues which will emanate out of that dispute, but none of our backcharges, which we didn't bring this claim, you brought

this claim, none of the backcharges we're asserting relate to those issues.
Clerk-Magistrate: Okay.  So let's not-
Mr. Tine: Okay, so-
Clerk-Magistrate: - go down that path, and that's good we had this discussion so it's on the record.[12] A true and accurate copy is attached hereto as Exhibit L[13].

Thus, counsel for ADP even stipulated at the DALA hearing that the dispute it brought before DALA was limited only to the backcharge for the coordination drawings.  His contention now that DALA litigated the pending issues before this Court is an outright lie, his entire motion a farce, a work of fiction founded on deception and an attempt to leverage money and settlement out of MDFA.

Following a three day hearing Magistrate Luick rendered her decision on ADP's petition and held, with respect to the sole issue before DALA the validity of the backcharge for coordination drawings, that MDFA was justified "in taking a backcharge of $44,620.00."  Exhibit H, Page 34.

In response to Magistrate Luick's decision, ADP filed a Motion for Reconsideration/Clarification requesting "that the Decision be modified to indicate that the MDFA should release payment of $5,380.00 to ADP."[14]  Exhibit I, Page 1.  MDFA responded to ADP's assertions stating, in part, that ADP made a strategic decision to limit its petition to the 39Q claims in order to invoke the jurisdiction of DALA and expedite recovery.  Exhibit J, Page 2.  In addition, it is clear that had ADP attempted to include a claim for contract balances, this would

---

[12] Counsel for ADP did not object.

[13] The referenced discussion is an excerpt of pages 68-75 of Exhibit L.  Pages 68-75 are highlighted for this Court's convenience and Exhibit L further consists of the entire transcribed portion of the DALA hearing.

[14] The $5,380.00 is the difference between MDFA's backcharge asserted of $50,000.00 and Magistrate Luick's decision of $44,620.00.

have been beyond the scope of DALA's jurisdiction necessitating a jurisdictional

challenge by MDFA.

Magistrate Luick issued a written decision, in response to ADP's Motion,

setting forth the applicable jurisdictional limitation of DALA and acknowledged

that there were other disputes between the parties which had yet to be resolved.

She held, in part, the following:

> DALA is not able to determine whether a General Contractor is
> entitled to their full contract payments. DALA is able to determine
> the merits of a change order-"changes in, and interpretation of the
> terms or scope of the contract and denials of or failures to act upon
> claims for payment for extra work or materials"-whether to
> determine if a Petitioner is entitled to an extra payment for extra
> work under the contract between the parties, or whether the agency
> is entitled to a credit change order or backcharge as occurred here.
> The merits of this claim for relief as to this particular backcharge
> dispute, is that MDFA has shown entitlement to a backcharge in
> connection with the required coordination drawings.  The amount
> proven entitled to is $44,260.  That is all.  DALA cannot order that
> ADPM received the difference from $50,000 of $5,380, since that it
> is not within the Section 39Q jurisdiction no matter how ADPM
> contends it presented its claim.  When all disputes concerning this
> project have ended, including the non-section 39Q claims, the
> amount that MDFA can take as credit for the coordination drawings
> dispute presented at the proceeding, is $44,260.  (emphasis
> added).  Exhibit K, Page 2.

Thus, DALA also recognized that there were outstanding disputes not

before DALA.  As Magistrate Luick stated correctly, the adjudicatory proceeding

was limited to the issue of coordination drawings, "that is all"; DALA could not

order ADP to receive the balance as that is beyond the scope and jurisdiction of

DALA.  Further, she acknowledged (which is confirmed by the exchange

referenced in this transcript) that there existed outstanding claims beyond the

jurisdiction of DALA.  As Magistrate Luick stated unequivocally, "when all

disputes concerning this project have ended, including the <u>non-section 39Q</u> <u>claims</u>" (the claims now before this Court), thereby documenting the existence of non-39Q issues not before DALA. [15]  Exhibit K, Page 2.

It is clear, the jurisdiction of DALA is limited only to those claims brought by a contractor.  MDFA can not avail itself of DALA.  ADP sought to have only the coordination drawings backcharge adjudicated at DALA, that is all.  ADP stipulated that the claim related only to the backcharge for coordination drawings. It did not seek resolution of any other disputes at DALA, including the claims for breach of contract which are the subject of this litigation.

## II.    DALA'S JURISDICTION DOES NOT EXTEND TO MDFA'S CLAIMS UNDER THE CONTRACT

ADP attempts, in its Motion, to expand the jurisdiction of DALA to include claims under the Contract asserted by MDFA in the pending action.  MDFA can not do so.  In doing so, ADP relies on correspondence submitted by MDFA to ADP regarding items that were not completed under the terms and provisions of the Contract.  The first letter referred to by ADP, from Mr. William M. Whelan to ADP, dated September 6, 2002, summarizes a meeting held with ADP in which outstanding work items were addressed.  The letter indicates that ADP should undertake to perform the disputed work under protest, as defined by the Contract.  Additionally, ADP refers to a letter from MDFA to ADP acknowledging once again a dispute as to outstanding work under the Contract and that ADP should undertake to perform the work, under protest, or risk being held in material breach of Contract.

---

[15] In addition, MDFA cited to this cause of action in its opposition brief.

ADP's attempt to somehow encapsulate these letters into conferring additional statutory jurisdiction to DALA is preposterous and absurd. Not only does each letter specify outstanding items of work to be completed under the terms of the Contract and that ADP should undertake to perform such work under protest, neither refers to the DALA proceeding whatsoever. This is yet another attempt by ADP to assert a groundless argument in order to stall the pending litigation and leverage MDFA into settlement.

Additionally, ADP's assertion that Article VIII(4)(d) "enunciates the applicability of Section 39Q to Article VIII(4) disputes"[16] is disingenuous and in error. First, Article VIII(6)(d) incorporates the language of M.G.L. c. 30 §39Q into the Contract in its entirety. Though it does reference Article VIII (4), it does so in the context solely of work to be performed under protest. The provision, entitled "Work Performed Under Protest", states, in part,

> The Contractor shall not in any way cease, suspend, delay, interrupt or otherwise impede its work for any reason, including any disputed work. In the event of a dispute, the Contractor shall always maintain the schedule and an adequate supply of manpower on the Project. Exhibit A, Pages 19-20.

That is, all matters which fall under the auspices of chapter 30 §39Q shall be handled with regard to the requirements of work being performed under protest. Thus, if a dispute arose under c. 30 §39Q and ADP sought administrative relief before DALA ADP would have to continue to perform the work under protest and adhere to the contractual mandates of doing such work or risk being in material breach of Contract.[17] This provision of the Contract (in

---

[16] ADP motion page 7.
[17] *See* Fn. 10.

addition to the statutory language) allows for the awarding authority, MDFA, to ensure work continued while a dispute was pending, regardless of the validity of the dispute.

This does not now thrust upon DALA additional jurisdiction in which to hear disputes brought by the awarding authority. This is simply not encompassed by the language of M.G.L. c. 30 §39Q and outside DALA's limited jurisdiction.[18] ADP's intermingling of these Contract provisions amounts to a clear misinterpretation of the Contract and a misreading of M.G.L. c. 30 §39Q.

Next, ADP's argument that MDFA's Proposed Findings of Fact and Rulings of Law empower DALA to hear the current dispute is once again, disingenuous and flat out wrong. The Findings of Fact referenced by ADP speak solely of the coordination drawings issue[19], the issue which was the subject of the DALA dispute, that is, whether MDFA was justified in backcharging ADP $50,000.00 for its failure to provide coordination drawings in accordance with the Contract. I fail to see how a reference to the coordination drawings, in which ADP brought to DALA as the subject of the appeal, now imposes upon DALA the statutory authority to hear breach of contract claims, negligence claims, and a claim under 93A which have been asserted by the awarding authority, MDFA, in

---

[18] It is important to note that ADP cites to section 39Q, specifically, "[t]he process involves an appeal to the chef executive officer of the state agency…" in this portion of their brief. Does ADP attempt to argue that somehow MDFA is to file an appeal to itself? It simply does not make any sense to read the statute, and the contract, in this manner.

[19] ADP refers to following Findings of Fact:

    2.  ADP breached the Contract by not providing Coordination Drawings in accordance with the Contract for the base building.

    3.  The Coordination Drawings furnished by ADP for the base building were insufficient, not complete, and properly rejected by MDFA.

    4.  ADP failed to provide any Coordination Drawings at all for the tenant fir up work.

    5.  ADP is in breach of Contract for failing to provide Coordination Drawings and, therefore, it cannot collect on the Contract. *See* ADP Brief at Page 7.

this cause of action. Once again, ADP misconstrues chapter 30 §39Q in its

assertion that MDFA declined to fully address "its breach of contract claims

against ADP." This is an outright fabrication and a clear and knowing

misinterpretation of the statute. As discussed previously, Magistrate Luick,

specifically addressed the issue of DALA's jurisdiction as to claims for breach of

contract and asserted, unequivocally,

> The merits of this claim for relief as to this particular backcharge in
> connection with the required coordination drawings. The amount
> proven entitled to is $44,260. That is all. Exhibit K, Page 2.

If ADP disagreed with the decision, it had to appeal to the Superior Court

under c. 30A. It failed to do so and therefore the decision is final. To now argue

the contrary, a second time, is a clear attempt by ADP to waste time and

expense, further delay its repairs to the Project and delay this proceeding. ADP's

arguments amount to a last ditch effort, grasping at straws, spewing distortions of

fact and half-truths, in an attempt to leverage MDFA into settling this dispute.

## III.    MDFA HAS NOT WAIVED ITS CLAIMS AS ADP SUBMITTED TO DALA ONLY THE CLAIM REGARDING MDFA'S BACKCHARGES FOR COORDINATION DRAWINGS

ADP misconstrues the jurisdiction of DALA, once again, in its assertion

that MDFA was required to fully litigate the breach of contract issue including any

affirmative claims at the DALA adjudicatory hearing. As stated, DALA's

jurisdiction under M.G.L. c. 30 §39Q is limited to claims asserted by contractors

involving changes in and interpretation of the terms and scope of a contract and

denials or failures to act upon claims for extra work or materials. See M.G.L. c.