30 §39Q. It is ADP that has this elective right under the statute and in filing its petition for relief to DALA, ADP chose to exercise this elective right.[20]

MDFA was not able to assert counterclaims as those non-39Q issues are beyond the jurisdiction of DALA. ADP's claim to DALA dealt with only MDFA's backcharge for coordination drawings. ADP did not avail itself of DALA to adjudicate any other claims including, but not limited to, the claims set forth in this litigation. Indeed, despite ADP's attempt to stretch the DALA appeal to include issues in the pending litigation, DALA's own decision makes it clear that the DALA proceeding involved only MDFA's backcharge for coordination drawings. ADP made a strategic decision to limit its petition to only an adjudication of the backcharge issue as it desired to invoke the jurisdiction of DALA under c. 30 §39Q in order to get an expedited result. By doing so, however, ADP could not have included a claim for its contract balance because to have done so would have exceeded the jurisdiction of c. 30 § 39Q. As found by Magistrate Luick, in her decision on ADP's Motion for Clarification, "DALA cannot order that ADPM receive the difference from $50,000 of $5,380, since that it is not within the Section 39Q jurisdiction no matter how ADPM contends it presented its claim." Exhibit K, Page 2.

Additionally, ADP relies on Fed.R.Civ.P. 13(a) and its definition of what is a compulsory counterclaim as identified by the First Circuit. ADP's discussion, however, conveniently neglects the fact that any counterclaim by MDFA is

---

[20] It is important to note that ADP could have filed suit in Court but elected not to do so.

beyond the scope of the jurisdiction of DALA.[21]  MDFA can not add claims

because the administrative remedy under c. 30 §39Q is available only to the

contractor.  ADP never submitted the pending claims to the C.E.O of MDFA nor

did it file a notice of claim in DALA.  ADP's petition to DALA is expressly limited

to the backcharge of $50,000.00 for coordination drawings. That is all.

## IV.    MDFA'S CLAIMS ARE NOT BARRED BY RES JUDICATA (CLAIM AND ISSUE PRECLUSION) AS MDFA'S PENDING CAUSES OF ACTION WERE NEVER LITIGATED NOR COULD THEY HAVE BEEN LITIGATED BEFORE DALA.

ADP attempts, throughout its brief, to interrelate the pending cause of

action with the underlying DALA dispute.  As stated previously, this is in error.

ADP's reference to claim and issue preclusion are irrelevant and immaterial since

MDFA was unable to assert its claims at the DALA hearing as they are beyond

the strict jurisdictional limitation of c. 30 §39Q.

DALA did not, in any manner whatsoever, rule on the claims of contractual

breach as to the HVAC system.  ADP stipulated that only coordination drawings

issues were before DALA, that is all.  ADP's assertion that MDFA's claims are

barred by the doctrine of *res judicata* (issue and claim preclusion) must fail on

three grounds, first, there is not an identity of the cause of action litigated at

DALA and the causes of action now before this court, second, the DALA dispute

involved only the issue, as raised by ADP, regarding the backcharge for the

---

[21] "Pursuant to Rule 13(a) a claim's compulsory status depends on whether (1) the claim arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim; and (2) the claim is one that the party "has" at the time that the party is to file his responsive pleading." Kane v. Magna Mixer Co. 71 F.3d 555, 561-562 (Ohio 1995) (emphasis added), see Harbor Ins. Co. v. Continental Bank Corp., 922 F.2d 357, 360 (7th Cir.1990) ... ("the only reason it is not a Rule 13(a) counterclaim is that it did not exist when the complaint was filed.").

Coordination Drawings and not any other claim and third, MDFA never litigated, nor could have litigated, the pending causes of action at the DALA hearing.

The doctrine of *res judicata* encompasses two doctrines, issue preclusion and claim preclusion. In the former, the party seeking to assert issue preclusion must show the following:

> (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; (3) the issue in the prior adjudication is identical to the issue in the current adjudication; and (4) the issue decided in the prior adjudication was essential to the earlier judgment. F. Green v. Town of Brookline, 53 Mass. App. Ct. 120, 123 (2001); See Martin v. Ring, 401 Mass. 59, 60-61, 514 N.E.2d 663 (1987); Commissioner of the Dept. of Employment & Training v. Dugan, 428 Mass. 138, 142, 697 N.E.2d 533 (1998).

"Issue preclusion attaches only to 'issues or questions of fact actually litigated and determined, not those that merely lurk in the record before the court.'" Pinshaw v. Metropolitan District Commission, 402 Mass. 687, 699 (1988), *quoting* In re Four Seasons Securities Laws Litigation, 370 F.Supp. 219, 235 (D.Okl.1974); Brown v. Felsen, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213, n. 10, 60 L.Ed.2d 767 (1979); See 18 C.A. Wright, A.R. Miller, & E. Cooper, Federal Practice & Procedure, § 4420 at 182, 183 (1981). Additionally, "[t]he doctrine may be applied with respect to administrative agency determinations so long as the tribunal rendering judgment has settled authority to adjudicate the dispute." L. Alba v. Raytheon Company, 441 Mass. 836, 841 (2004).

Here, the DALA hearing did not involve, in any way, a defective HVAC system and leaking roof and exterior façade that are now the subject of the causes of action asserted by MDFA. The issues were not actually litigated and

determined by DALA.  Nor could they have been litigated by DALA unless ADP brought them to DALA, which it did not.  ADP's assertion that the coordination drawings issue and the faulty and negligent installation of the HVAC system interrelate misconstrues the two issues.  The narrow focus of the DALA proceeding (as framed by ADP) was the validity of the backcharge for lack of coordination drawings, that is all.  Counsel for ADP admits and stipulates to such in the record of the DALA hearing.  See Exhibit L.  The current issues, as it relates to the HVAC system, stem from HVAC deficiencies, and despite numerous demands being made, ADP's refusal to correct said deficiencies.  The fact that in MDFA's defense as to the validity of the backcharge MDFA discussed deficient installation is irrelevant, as the issues are not identical nor were they "actually litigated and determined."  See Pinshaw, 402 Mass. at 699.

Additionally, MDFA could not have submitted the HVAC claims to DALA as the remedy under M.G.L. c. 30 §39Q is only for the general contractor.  Therefore, the claims were not, nor could they have been, adjudicated at the DALA proceeding, unless ADP submitted them, which it decided not to do so.  DALA had no "authority to adjudicate the dispute."  L. Alba, 441 Mass. at 841.

"Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action." O'Neill v. City Manager of Cambridge, 428 Mass. 257, 259-260, quoting Blanchette v. School Comm. of Westwood, 427 Mass. 176, 179 n. 3 (1998). "It is 'based on the idea that the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit.'"

Id. quoting Heacock v. Heacock, 402 Mass. 21, 24, (1988), quoting Foster v.

Evans, 384 Mass. 687, 696 n. 10, (1981). Claim preclusion does not apply

where "a party did not have an opportunity to raise the claim at the earlier

proceeding." Id.

As is clear from the DALA record, the only issue litigated was that of the

backcharge for the coordination drawings. It is clear in counsel for ADP's own

words,

> Mr. Tine: [counsel for ADP] We believe it's beyond the scope of this proceeding –
> …
> Mr. Tine:  - if counsel have an agreement that it's not a subject of this appeal and won't be raised, I won't raise it.
> …
> Defense Atty:   But I'd like to move to strike his testimony on this issue. Otherwise I've got to –
> Clerk-Magistrate: …  To me, the issue is not whether the whole contract is completely fine and everybody's walking away with a handshake.  It's just what has to do with this coordination issue.
> Exhibit L, Pages 69-70.

ADP's attempt to somehow incorporate the DALA issue and the case at

bar amounts to clear bootstrapping and should be rejected outright by the court.

The allegations of the current cause of action, in part, read as follows:

> Pursuant to the contract, Fluor[22], through Allied, furnished a design for the HVAC system.
>
> Pursuant to the contract, Fluor furnished and installed the HVAC system, pursuant to the design of Allied.
>
> Pursuant to the contract, Fluor installed the windows between the floors, and the glass curtain wall in the so called "knuckle" section of the building.
>
> On or about August 20, 2001, Fluor substantially completed the contract.

---

[22] Fluor refers to ADP for purposes of the Complaint.

On or about December 2001, MDFA, and its tenant, UMASS
Dartmouth, occupied a portion of the building.

At various times after occupancy of the building, MDFA discovered
deficiencies with the HVAC system in the building.

MDFA made demand upon Fluor to correct said deficiencies.

Fluor initially attempted to fix the HVAC system, but, failed to do so.

MDFA made demand upon Fluor again to correct the HVAC
system, but Fluor has continued to refuse to do so.

After taking occupancy, MDFA encountered leaking in both the
windows at each level, MDFA made demand on Fluor to correct the
deficiencies in the windows.

Despite said demand, Fluor has failed and refused to correct the
deficiencies on the windows.

Fluor's refusal to correct its deficient work is a breach of the
contract.

As a result of Fluor's breach of contract, MDFA will incur significant
expense to correct Fluor's deficient work.

Fluor has breached its contract by failing and refusing to correct its
defective work.

These claims are separate and distinct from the administrative remedy

sought by ADP in the underlying DALA action and were not nor could they have

been litigated as a result of c. 30 §39Q's limited jurisdiction. Additionally, (and

once again), ADP asserts that the Findings of Fact set forth by MDFA in the

underlying DALA hearing somehow incorporates the pending cause of action into

the decided DALA dispute. The Findings of Fact speak solely of the coordination

drawings issue the issue which was the subject of the DALA dispute, that is,

whether MDFA was justified in backcharging ADP $50,000.00 for its failure to provide coordination drawings in accordance with the Contract. *See* Fn. 19.

ADP's further reference to MDFA's Post Hearing Brief and Opposition to ADP's Motion for Consideration provide no authority for asserting that the pending cause of action is barred under the doctrine of "claim preclusion." The pending claims were not nor could they have been adjudicated in the action. *See* O'Neill v. City Manager of Cambridge, 428 Mass. at 259. ADP misconstrues chapter 30 §39Q and the jurisdiction of DALA, not to mention what was actually litigated before DALA. As discussed previously, Magistrate Luick, specifically addressed the issue of DALA's jurisdiction as to claims for breach of contract and asserted, unequivocally,

> The merits of this claim for relief as to this particular backcharge in connection with the required coordination drawings. The amount proven entitled to is $44,260. That is all. Exhibit K, Page 1.

ADP's argument is based on assumptions, misinterpretations, misconstructions, fabrications and leaps of faith. ADP provides no justifiable basis that the pending causes of action are to be barred under the doctrine of *res judicata.* As indicated above, there is not an identity of the cause of action litigated at DALA and the cause of action now before this court, the DALA dispute involved only the issue, as raised by ADP, regarding the backcharge for the coordination drawings and not any other claim and MDFA never litigated, nor could they have litigated, the pending causes of action at the DALA hearing. As such, ADP's argument that MDFA is barred from bringing the pending action must be wholly denied.

## V.    THE DOCTRINE OF *RES JUDICATA* APPLIES TO THE COORDINATION DRAWINGS ISSUE DECIDED BY DALA

ADP bluntly asserts that *res judicata* is a two-way street, however, ADP purposely misconstrues the doctrine and its applicability to the claim and issue actually decided by DALA.  ADP, inconceivably, now asserts that "MDFA and ADP litigated the claims of contractual breach as to the HVAC system."[23]  As stated above, that is simply inaccurate.  Counsel for ADP's own words at the DALA hearing contradict this argument.

DALA rendered a final judgment on the merits as to the coordination drawings issue only.  In light of this fact, the matters actually litigated at the administrative hearing are barred by *res judicata*.  As defined above, *res judicata* encompasses the doctrine of issue and claim preclusion.  At the DALA hearing, the issue that was carefully framed for adjudication was the validity of MDFA's backcharge as it related to the lack of coordination drawings submitted by ADP on the Project.  ADP submitted its petition to DALA, MDFA responded and a three day hearing was held in front of Magistrate Luick.[24]  Following the conclusion of the proceedings Magistrate Luick submitted her decision.  *See* Exhibit H.  In finding for MDFA in the amount of $44,620.00, Magistrate Luick set forth detailed Findings of Fact and Conclusions of Law.

"As to claim preclusion, final judgment on the merits of an action precludes parties from relitigating claims that were raised or could have been raised in that

---

[23] ADP Motion page 11.

[24] During the hearing, ADP presented the testimony of Robert Greetham, Project Manager for ADP.  MDFA presented the testimony of Neal Hannon, Project Manager, Leslie Glynn of Symmes Maini & McKee Associates (hereinafter "SMMA"), Project Director and Charles Vaciliou, Vice President of Erland Construction, consultant to MDFA.  The parties were allowed cross-examination, provided opening and closing argument and were allowed to submit post-trial briefs.

action." Roger v. Pomeroy, 2004 Mass. App. Div. 176, *5 (2004) citing e.g., Porn v. National Grange Mut. Ins. Co., 93 F.3d 31, 34 (1st Cir.1996) (citations omitted). Here, both ADP and MDFA were parties to the underlying DALA action and DALA issued a final judgment on the merits. Here, ADP is now barred from contesting the validity of the backcharge as DALA expressly held the amount proven at the hearing to be $44,260.00. Further litigation of ADP's claim to the backcharges is barred by claim preclusion.

As to issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Id. at *6 citing Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (citations omitted). DALA set forth, in order to render its judgment, Findings of Fact and Conclusions of Law. Those matters were litigated before DALA. Thus, relitigation of those issues is barred by the doctrine of issue preclusion.

## VI.    MDFA'S CLAIMS ARE NOT UNTIMELY NOR ARE THEY LIMITED UNDER THE TERMS OF THE CONTRACT

ADP's assertion that MDFA's claims are untimely are without merit as MDFA provided ample notice to ADP with regard to claims set forth in this cause of action. The Project was substantially completed on August 21, 2001. As early as January 8, 2002, after the heating system had been in use, William M. Whelan, Property Manager on the Project for MDFA faxed correspondence to Mr. James Maguire, the Mechanical Project Engineer for ADP on the Project. See Whelan Affidavit ¶3. The document faxed to Mr. Maguire on January 8, 2002 was entitled "Mechanical System Issues list" and consisted of a detailed

statement of the defective work that existed on the Project. *See* Whelan Affidavit

¶C. This was certainly timely notice. ADP failed to correct the work.

On July 29, 2002, Mr. Neal Hannon[25], of the Hannon Company, notified

ADP of the outstanding issues on the Project. This memorandum was

addressed to Bob Greetham, Project Manager for ADP, and entitled "ADP

Marshall Warranty Issues". *See* Exhibit D. The July 29, 2002 memorandum sets

forth problems encountered with respect to the HVAC system. The following

defects were highlighted in the memorandum:

> Low temperature of heating hot water in the east wing
> Inability to get adequate cooling in the central core (knuckle)(i.e.:
> conference room overheating)
> Question regarding winter cooling of small heat load areas.
> *See* Exhibit D.

ADP failed to correct the work. Again, on August 5, 2002 MDFA, through Mr.

Whelan, took part in a follow up meeting with Mr. Robert Greetham with regard to

outstanding issues MDFA identified at the project:

> Life/Safety Sprinkler System leak in front of first floor elevator door,
> which stains the floor on a regular basis.
>
> Front and rear lobby doors have multiple screws missing on hinges
> and appear to not be aligned properly.
>
> The outstanding $96.00 bill for door repair.
>
> Several lab exhaust fans remain disconnected and inoperative.
>
> The HVAC box in Room 111-1 is emanating a very loud vibrating
> noise. An Andover tech troubleshot the box and advised that a
> starter relay requires replacing.
>
> Heating hot water appears to not be circulating properly. The return
> temp of 170 degrees is being met at the boiler return line; however,
> the supply to the loading dock fan coils and the east wing convector

---

[25] Mr. Hannon served as the Project Manager for MDFA.

units was measured at a mere 110 degrees. Due to this issue, the loading dock is very cold in the winter and the east wing regularly gets down to 40 degrees.

The O&M for Ademco burglar alarm panel.

Window leaks.

Conference rooms overheating when in use.

As-builts on CAD for all trades to be delivered to MassDevelopment.

Supply Fan forAHU2 runs at 100% because the system cannot maintain 1.5" of W.C. static pressure.

Chiller trips out when demand for chilled water is very low in the winter.

Reception desk open strip missing.

Electrical panels mislabeled throughout building. Room numbers are wrong.

End of the east wing has no HVAC supply air east of the fire doors, the end of the hallway gets very warm and stagnant in the summer.

A drip edge needs to be installed over West stairwell exit door.

ADP failed to correct the work.  Subsequent to this meeting, on

September 6, 2002, via facsimile and hard copy, Mr. Whelan, at the direction of

MDFA, sent a follow-up letter to Mr. Greetham regarding the items that had not

been repaired.  This letter was included as an Exhibit to ADP's Motion and

referenced the September meeting.  How can ADP now come forward, as an

officer of this court, and allege notice was not provided to ADP?  It can not.  The

September letter specifically listed what outstanding items remained and what

remedial measures had been completed since the August 5, 2002 meeting.

Following this, follow up conversations with Mr. Greetham and a letter from ADP,

signed by Mr. Greetham, to Mr. Whelan dated September 25, 2002 revealed that

ADP was unwilling to cure several of the remaining deficiencies. In fact, ADP

refused to attend an October 16, 2002 site meeting which was intended to be an

attempt to resolve the pending disputes. *See* Whelan Affidavit ¶14.

Next, ADP's assertion that MDFA's claims are "too great" misinterprets

Article XI, of the Contract. Article XI, entitled, Guaranty, specifically states,

> Contractor shall, for the protection of MassDevelopment, demand
> from all vendors from which Contractor procures machines,
> equipment materials and services, guarantees with respect to such
> machines, equipment materials and services, which shall be made
> available to MassDevelopment to the full extent of the terms
> thereof. Contractor's liability with respect to such machinery,
> equipment, materials and services shall include procuring
> guarantees from such vendors and enforcing such guarantees for
> the benefit of MassDevelopment. (emphasis added). Exhibit A,
> Page 31.

First, the request for ADP to procure warranties is standard. In fact, ADP

procured warranties for MDFA on the Project. A general contractor's duty to

produce warranties, is standard, and does not arise only when there is a

problem. This has nothing to do with ADP's failure to correct defective work.

Further, MDFA made numerous demands on ADP to correct defective work

beginning on January 8, 2002 - well within one year of substantial completion.

ADP had ample opportunity, within the one year period, to demand that its

subcontractors correct this defective work. ADP, and specifically its

subcontractors, simply did not respond to the numerous requests by MDFA to

repair the defective work.

Additionally, ADP mistakenly relies on Article XI as setting forth <u>all</u> of

ADP's responsibilities under the Contract and relieving ADP of its liability with

regard to defective work. This is simply not true. The current claims before this

Court are <u>not warranty</u> items but are claims resulting from ADP's defective

design and workmanship.

In any event, the Contract specifically addresses ADP's responsibility with

respect to defective work and materials. Article V (6) of the Contract, states, in

part,

> Material not conforming to the Contract Documents <u>shall be</u>
> <u>rejected</u> and removed from the Work by the Contractor... Should
> the Contractor fail to remove the defective material within a
> reasonable time, MassDevelopment shall have the authority to
> remove and replace the defective material, and the cost of such
> removal and replacement will be deducted from any moneys due or
> to become due the Contractor. Exhibit A, Page 12. (emphasis
> added).

Further, Article V (7) states,

> [D]efective work shall be corrected pursuant to the standard of care
> and diligence set forth in the guarantee in Article XI. <u>Unsuitable</u>
> <u>work may be rejected</u> ... If the Work or any part thereof shall be
> found defective at any time before the final acceptance of the whole
> Work, the Contractor shall forthwith make good such defect in a
> manner pursuant to the standard of care and diligence set forth in
> the guarantee in Article XI. [26] Exhibit A, Page 12 (emphasis
> added).

Here, the Contract specifically covers situations where the work performed

by ADP is defective, regardless of warranty. Where warranty items are

composed of work that was completed properly and is subsequently defective,

---

[26] As stated in Article XI, the Contractor shall ensure that work performed, shall be undertaken and completed in a professional manner in accordance with the standards of care and diligence normally practiced by recognized engineering construction management firms in performing work of a similar nature.

the claims before this court stem from work that was not completed properly from the outset and are defective; hence, they are <u>not</u> warranty items. ADP attempts, mistakenly, to encapsulate all of ADP's responsibilities and liabilities within Article XI of the Contract and ignores the remaining provisions, specifically those referred to under Article V of the Contract. ADP is wrong and its argument is baseless and this is simply another attempt by ADP to delay and stonewall the resolution of this matter.

## Conclusion

For the foregoing reasons, MDFA requests that this Honorable Court DENY ADP's Motion for Summary Judgment.

Respectfully submitted,
MASSACHUSETTS DEVELOPMENT
FINANCE AGENCY
By its attorney,

Edward F. Vena, Esquire
BBO NO. 508660
Sabatino F. Leo
BBO NO. 642302
VENA, RILEY, DEPTULA, LLP
250 Summer Street
Boston, MA 02210
(617)951-2400

Dated: January 14, 2005

## **CERTIFICATE OF SERVICE**

I,  Sabatino F. Leo, Esquire, hereby certify that I have, on this _14_ th day of January, 2005, served a copy of the within by first-class mail, postage pre-paid upon all counsel of record.

Sabatino F. Leo

37