UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 JAN 21  P 2: 48

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| MASSACHUSETTS DEVELOPMENT FINANCE AGENCY<br>Plaintiff | :<br>:<br>:<br>: |
| v. | : |
| ADP MARSHALL, INC., a FLUOR DANIEL COMPANY and FIREMAN'S FUND INSURANCE COMPANY<br>Defendants | :<br>:<br>:<br>:   C.A. NO. 04-CV-10203 PBS<br>: |
| v. | : |
| ALLIED CONSULTING ENGINEERING SERVICES, INC., ANDOVER CONTROLS CORPORATION, R&R WINDOW CONTRACTORS, INC., and DELTA KEYSPAN, INC. n/k/a DELTA KEYSPAN, LLC, MADDISON ASSOCIATES, INC., UNITED STATES FIDELITY AND GUARANTY COMPANY FIDELITY AND DEPOSIT OF MARYLAND NATIONAL GRANGE MUTUAL INSURANCE COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, AMERICAN HOME ASSURANCE COMPANY, HARTFORD ROOFING COMPANY, INC. and SPAGNOLO/GISNESS & ASSOCIATES, INC.<br>Third-Party Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

<u>THIRD-PARTY DEFENDANT DELTA KEYSPAN, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANT/THIRD-PARTY PLAINTIFF ADP MARSHALL, INC.</u>

Third-Party Defendant Delta Keyspan, Inc., n/k/a Delta Keyspan, LLC. ("Delta") herein submits this Memorandum of Law In Opposition to the Motion for Summary Judgment filed by Defendant/Third-Party Plaintiff ADP Marshall, Inc. ("Marshall").

As set forth in full below, Marshall's Motion for Summary Judgment should be denied due to the following:

1. Marshall's Motion is not supported by competent evidence as required by Fed. R. Civ. P. 56.[1]

2. Genuine issues of material fact exist for the trier of fact as to whether Marshall's complained-of damages were caused by Delta's work on the Project at issue in this litigation. *See* Affidavit of Raymond Keough filed herewith.

I. **STATEMENT OF FACTS**

The Plaintiff, Massachusetts Development Finance Agency (hereinafter "MDFA") financed a project known as the Advanced Technology and Training Center in Fall River, Massachusetts (the "Project"), a 60,000 square foot laboratory and research center." *See* Complaint, Paragraph 5. The Project was developed in conjunction with the University of Massachusetts, Dartmouth and the City of Fall River. *Id.*, at Paragraph 6. For the design and construction of the Project, MDFA entered into a contract with Marshall dated September 17, 2000. *Id.*, at Paragraph 15.

As part of the Project, Marshall entered into a contract dated August 15, 2000, with the Third-Party Defendant Allied Consulting Engineering Services, Inc. (hereinafter "Allied") pursuant to which Allied designed the heating, ventilation and air-conditioning ("HVAC") system for the Project. *See* First Amended Third-Party Complaint, Paragraph 7.

For the installation of the HVAC system, Marshall entered into a contract (hereinafter the "Delta Contract") dated January 19, 2001, with Delta. *See* First Amended Third-Party

---

[1] Delta has filed a Motion To Strike Certain Portions Of And Exhibits To The Affidavit Of Tom Hughes together with the within Objection.

2

Complaint, Paragraph 10. (The Delta Contract is attached as Exhibit 1 to the Affidavit of Tom Hughes.).

The Delta Contract, at Section 8.2 thereof, controls Marshall's claims for indemnification against Delta. Section 8.2 provides:

> The Subcontractor [Delta] agrees to indemnify the Construction Manager [Marshall] and its surety from and against any and all actions, suits, proceedings, claims or demands arising out of or alleged to have arisen out of the performance of or the operations under this Subcontract. In the event any action, suit or proceeding is instituted against the Construction Manager or its surety upon any liability or defect arising out of or alleged to have arisen out of the performance of or the operations under the Subcontract, or in the event of any claim, counter-claim, set-off, recoupment or other defense is made or asserted against the Construction Manager upon any liability or defect arising out of or alleged to have arisen out of the performance of or the operations under this Subcontract, the Construction Manager shall, within thirty (30) days, give notice in writing thereof to the Subcontractor which, at its own cost and expense, shall defend against such action, suit, proceeding, claim, counter-claim, set-off, recoupment or other defense and take all such steps as the Construction Manager may deem necessary to prevent the obtaining of judgment against or the successful maintenance or such claim, counter-claim, set-off, recoupment or other defense against the Construction Manager. Notwithstanding the foregoing, the Construction Manager shall be permitted to be represented by its own counsel should the Construction Manager so desire.

Section 8.2 does not include an express allowance for the recovery of attorney's fees.

Section 8.1 of the Delta Contract, upon which Marshall partially relies, does not apply to Marshall's claim of indemnification against Delta. It covers personal injury claims "or to injury to or destruction of tangible property *(other than the work itself)* including loss of use resulting therefrom." (Emphasis supplied). Since Marshall's claims against Delta arise out of Delta's work on the Project, Section 8.2, not 8.1, applies here.

Many other contracts were executed by Marshall as part of the Project. These included a contract dated August 9, 2000 with Third-Party Defendant, Andover Controls Corporation for the "controls work" of the HVAC system for the Project (*id.*, at Paragraph 8), a contract with Third-Party Defendant, R&R Window Contractors, Inc. dated December 6, 2000, for the

"installation of the glazed aluminum curtainwall and aluminum entrances and storefronts on the Project," (*id.*, Paragraph 9), a contract dated October 26, 2000, with Third-Party Defendant, Maddison Associates, Inc. for the "installation of the exterior metal wall panels and associated caulking.," (*id.*, at Count IX, Paragraph 52), a contract with Third-Party Defendant Hartford Roofing Company, Inc. for the "performance of the roofing work and associated caulking," (*id.*, at Count XVI, Paragraph 101), and a contract with the Third-Party Defendant, Spagnolo/Gisness Associates, Inc. for "certain architectural and design work on the Project." *Id.*, at Count XVIII, Paragraph 113.

The Project reached substantial completion on August 20, 2001. *See* Complaint, Paragraph 20, 2001. MDFA asserts non-specific allegations that "at various times after occupancy of the building, MDFA discovered deficiencies with the HVAC system in the building." *Id.*, at Paragraph 23. MDFA's complaints as to the HVAC system do not specifically mention Delta. *Id.* MDFA also alleges that after taking occupancy of the building it found "leaking in both the windows at each level, and, the so-called curtain wall in the knuckle of the building." *Id.*, at Paragraph 27. Consequently, MDFA commenced an action in Suffolk Superior Court on or about December 2, 2003, against Marshall for failing to correct the alleged deficiencies in the HVAC system and windows. Marshall removed the action to this Court.

On or about February 5, 2004, Marshall commenced the third-party action seeking contractual and common-law indemnification and contribution against each of the Third-Party Defendants for the alleged deficiencies caused by the work of the Third-Party Defendants. More specifically, Marshall alleges that it gave notice to R&R "that the MDFA claimed some of the windows at the Project were leaking." *See* First Amended Third-Party Complaint, at Paragraph

4

13. Marshall alleges that it notified Andover Controls that MDFA "had a concern with the heating on the first floor of the east wing, claiming it was short-circuiting." *Id.*, at Paragraph 14.

As to Delta, Marshall alleges that it is in breach of contract for failing to defend and indemnify Marshall for the claims of MDFA relating to Delta's work on the Project. *Id.*, Count I, Paragraph 31. Marshall also claims common-law indemnification and contribution against Delta for the damages incurred by Marshall "to the extent it relates to the work of Delta Keyspan on the Project." *Id.*, at Count V, Paragraph 43.

In addition to the allegations set forth by MDFA in the Complaint and those set forth in the First Amended Third-Party Complaint, through the Affidavit of Tom Hughes, Marshall also asserts that it received a letter from William Whelan, apparent agent of MDFA, dated September 6, 2002, itemizing certain problems with the Project. *See* Marshall's Motion for Summary Judgment, Affidavit of Tom Hughes, Paragraph 7. The problems mentioned in Mr. Whelan's letter, moreover, are not the result of Delta's work on the Project. *See* Affidavit of Raymond Keough, Paragraph 7-14.[2]

Also with the Affidavit of Tom Hughes, in further support of its Motion for Summary Judgment, Marshall submits an unsigned letter of Richard Comeau, purportedly the HVAC expert, not of Marshall, but of MDFA. *See* Affidavit of Tom Hughes, Paragraph 10, and Exhibit 4 attached thereto. Mr. Comeau's letter was produced by MDFA in June 2004 in conjunction with the within litigation. As with the letter of William Whelan, the Richard Comeau letter is the subject of Delta's Motion to Strike filed herewith and it should not be given consideration by the Court as support for Marshall's Motion for Summary Judgment. Mr. Comeau's letter, lastly, does not support an allegation that Delta failed to perform its work in violation of the Project

---

[2] As outlined in Delta's Motion to Strike filed herewith, Mr. Whelan's letter should not be considered for purposes of Marshall's Motion for Summary Judgment.

specifications or was otherwise negligent in its work. *See* Affidavit of Raymond Keough, Paragraphs 15-25.

## II.  CONCISE STATEMENT OF MATERIAL FACTS OF RECORD WHICH REQUIRE A GENUINE ISSUE TO BE TRIED

1.  On or about January 19, 2001, Marshall and Delta entered into the Delta Contract whereby Delta would install the HVAC system of the Project. See Affidavit of Raymond Keough, Paragraph 4.

2.  Section 8.2, not Section 8.1, of the Delta Contract applies to Marshall's claim for indemnification against Delta.

3.  The allegations of problems related to the Project as set forth in the letter of September 6, 2002, by William Whelan, apparent agent of MDFA, to Marshall (Exhibit 2 of Marshall's Motion for Summary Judgment), are not the result of Delta's work on the Project. Affidavit of Raymond Keough, Paragraph 7.

4.  Specifically, out of the 18 itemized problems with the Project listed in Mr. Whelan's letter, only items 5, 6, 13, and 16 remotely concern the HVAC system. Affidavit of Mr. Keough, Paragraph 8.

5.  The problem expressed in Paragraph 5 of Mr. Whelan's letter ("[t]he HVAC box in Room 111-1 is emanating a very load vibrating noise.") is not an issue in this litigation- as it has been "completed" by an Andover tech. Affidavit of Mr. Keough, Paragraph 9.

6.  The problem expressed in Paragraph 6 of Mr. Whelan's letter ("Heating hot water appears to not be circulating properly."), likewise, is not directed at the work of Delta on the Project, but is an allegation of a design issue relating to the hot water pumps agreed upon by the parties to the Project- including Marshall. Affidavit of Mr. Keough, Paragraph 10.

7. The problem expressed in Paragraph 13 of Mr. Whelan's letter ("Chiller trips out when demand for chilled water is very low in the winter.") also is an allegation unrelated to Delta's work. The issue concerns the type of system specified for the Project and the amount of tenants in the building. Affidavit of Mr. Keough, Paragraph 11.

8. The problem expressed in Paragraph 16 of Mr. Whelan's letter ("End of the east wing has no HVAC supply air east of the fire doors.") is an allegation of a problem with the design of the system and is not related to Delta's installation of it. Affidavit of Mr. Keough, Paragraph 12.

9. The other items in Mr. Whelan's letter have nothing to do with Delta's work on the Project, but concern issues relating to engineering, electrical and carpentry. Affidavit of Mr. Keough, Paragraph 13.

10. Nothing in Mr. Whelan's letter is an allegation that Delta failed to perform according to drawings or specifications for the Project. Affidavit of Mr. Keough, Paragraph 14.

11. The letter of Richard Comeau dated April 9, 2003, contains issues not associated with Delta's performance of its work on the Project. Affidavit of Mr. Keough, Paragraph 15.

12. The items mentioned in paragraphs 1-3 of Mr. Comeau's letter concern the air intake louver sizes. The louver sizes were included in the Project specifications and drawings and were agreed upon by Marshall. The item mentioned in item 3 ("air intake depth sizing") was performed with approval from Marshall. Affidavit of Mr. Keough, Paragraph 16.

13. The items discussed in paragraphs 4 and 5 of Mr. Comeau's letter deal strictly with design, and not of Delta's performance. Affidavit of Mr. Keough, Paragraph 17.

14. The item discussed in paragraph 6 ("air conditioning load") is a design issue made between the designer and Marshall. Delta performed this work pursuant to the specifications for the Project. Affidavit of Mr. Keough, Paragraph 18.

15. Item 7 in Mr. Comeau's letter deals with air control valves- which is not related to Delta's work. Affidavit of Mr. Keough, Paragraph 19.

16. The alleged problems mentioned in paragraph 8 of Mr. Comeau's letter are not against Delta's work on the Project. The exhaust ducts (subparagraph A) are sealed eternally. The exhaust ducts (subparagraph B) were installed according to the specifications contained in the drawings. Subparagraph C is an overall description of the design of the system. Affidavit of Mr. Keough, Paragraph 20.

17. The item in paragraph 9 is incorrect if it is directed at Delta. Delta did submit shop drawings for this Project. Affidavit of Mr. Keough, Paragraph 21.

18. The item of paragraph 10 is a *control* issue- which is not a concern of Delta. Affidavit of Mr. Keough, Paragraph 22.

19. The item contained in paragraph 11 is incorrect- Delta did perform the balancing and provided the report of it to Allied and Marshall. Affidavit of Mr. Keough, Paragraph 23.

20. The items mentioned in paragraph 12 regarding certain equipment being undersized is an allegation directed at the design of the system. Delta complied with the specifications and drawings relative to this issue. Affidavit of Mr. Keough, Paragraph 24.

21. The alleged problem mentioned in paragraph 13 is directed at the specifications and design of the system. Delta followed the specifications for the Project. Mr. Comeau is stating there that the client may want to upgrade to a more capable and expensive system. Affidavit of Mr. Keough, Paragraph 25.

## III. <u>ARGUMENT</u>

Marshall has failed to come forward with sufficient competent evidence in support of its Motion for Summary Judgment. As explained in *Equal Employment Opportunity Comm'n v. Unión Independiente de la Autoridad de Acueductos Y Alcantarillados de Puerto Rico*, 279 F.3d 49, 55 (1st Cir. 2002) summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir. 1995) (*quoting* Fed. R. Civ. P. 56(c)). The record evidence must be construed "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Id.*, quoting *Feliciano de la Cruz v. El Conquistador Resort Country Club*, 218 F.3d 1, 5 (1st Cir. 2000).

In addition, where the party moving for summary judgment bears the burden of proof on an issue, he cannot prevail "unless the evidence that he provides on that issue is *conclusive.*" *Id.*, quoting *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35 (1st Cir. 1998) (emphasis added); *see also Calderone v. United States*, 799 F.2d 254, 258 (1st Cir. 1986) (explaining that if a summary judgment movant has the burden of proof, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party") (citation and emphasis omitted); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) ("[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor.") (emphasis in original).

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Garside v. Osco Drug, Inc.*, 895 F.2d 46 (1st Cir. 1990). The movant must put the ball in play, averring "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If done, then the burden shifts to the nonmovant to establish the existence of at least one fact issue which is both "genuine" and "material." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir. 1989); *Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 15 (1st Cir. 1986); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied,* 425 U.S. 904 (1976).

A "genuine" issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. Put another way, a "genuine" issue exists if there is "sufficient evidence supporting the claimed factual dispute" to require a choice between "the parties' differing versions of the truth at trial." *Hahn*, 523 F.2d at 464 (*quoting First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289 (1968)). A "material" issue is one that "affect[s] the outcome of the suit," *Anderson*, 477 U.S. at 248, that is, an issue which, perforce, "need[s] to be resolved before the related legal issues can be decided." *Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989).

The letters of William Whelan and Mr. Comeau and certain portions of the Tom Hughes affidavit, as more particularly stated in Delta's Motion to Strike, should not be considered by the Court in deciding the within motion. They do not comport with the evidentiary requirements of Fed. R. Civ. P. 56(e). Rule 56(e) requires that affidavits filed in support of summary judgment motions "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters

stated therein." Fed. R. Civ. P. 56(e). In addition, Rule 56(e) requires that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Fed. R. Civ. P. 56(e). *See also* 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2722, at 379-80 & 382-84 (1998) ("Rule 56(e) requires that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit.... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.").

"An affidavit submitted in connection with a Summary Judgment Motion is subject to a motion to strike if it does not measure up to the standards of Rule 56(e) of the Federal Rules of Civil Procedure." *International Ship Repair & Marine Servs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 906 F. Supp. 645, 648 (M.D. Fla. 1995). *See also Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."); *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995). Inadmissible hearsay "cannot be considered on a motion for summary judgment." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990). An affiant may state his or her opinion "only where it appears that the affiant is competent to give an expert opinion." *Garside*, 895 F.2d at 50.

These principles apply to expert reports, which must be sworn to by the author in order to be admissible on summary judgment. *See, e.g., Scott v. Edinburg*, 346 F.3d 752, 759 (7th Cir. 2003) (holding inadmissible for summary judgment purposes expert report that "was introduced into the record without any supporting affidavit verifying its authenticity"); *Fowle v. C & C*

*Cola*, 868 F.2d 59, 67 (3d Cir. 1989) (unsworn expert report "is not competent to be considered on a motion for summary judgment"); *Sofford v. Schindler Elevator Corp.*, 954 F. Supp. 1459, 1462 (D. Colo. 1997) (holding that unsworn expert report were "not competent evidence for [court's] consideration in ruling on the motion for summary judgment").

The letters of Mr. Whelan (Exhibit 2) and Mr. Comeau (Exhibit 4) to Hughes' affidavit should be stricken and disregarded for purposes of summary judgment because they are not authenticated and constitute inadmissible hearsay. Additionally, certain portions of Hughes' affidavit (paragraphs 7 and 11) should be stricken because they, *inter alia*, contain facts not based on personal knowledge, constitute inadmissible conclusory assertions and opinions, and do not affirmatively show that he is competent to testify to the matters asserted. These deficiencies render the challenged portions of Hughes' affidavit and attached exhibits inadmissible for purposes of summary judgment.

Mr. Whelan and Mr. Comeau, moreover, are not even witnesses proferred by Marshall. They are witnesses of MDFA. Marshall cannot be an advocate as to the veracity of these witnesses. Indeed, Marshall denies the assertions made by Mr. Whelan and Mr. Comeau regarding the Project. As such, Marshall has failed to carry its initial burden in putting the ball in play, averring "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In response, Delta has submitted the Affidavit of Raymond Keough, the Delta employee directly in charge of the Project. Mr. Keough makes it clear that the items presented in the William Whelan letter are not the result of Delta's work on the Project. Affidavit of Raymond Keough, Paragraph 7-14. Mr. Keough specifically states that out of the 18 itemized problems with the Project listed in Mr. Whelan's letter, only items 5, 6, 13, and 16 remotely concern the

12

HVAC system. Affidavit of Mr. Keough, Paragraph 8. He further states that the alleged problems stated in paragraphs 5, 6, 13, and 16 are related to the design of the HVAC system. *See* Affidavit of Mr. Keough, Paragraphs 9-12.

Likewise, concerning the letter of Mr. Comeau produced in this litigation by MDFA, Mr. Keough makes it abundantly clear that Marshall is not being sued by MDFA due to Delta's work on the Project. Mr. Keough, point by point (see Mr. Keough Affidavit, at Paragraphs 15-25), shows that Delta performed the work in conformity with the specifications and drawings for the Project and with full knowledge and disclosure of Marshall. At the very least, genuine issues of material fact exist for the trier of fact to determine the claims being asserted by Marshall against Delta.

## IV.    CONCLUSION

For the above reasons and for the reasons set forth in Delta's Motion to Strike Certain Portions of and Exhibits to the Affidavit of Tom Hughes, Marshall's Motion for Summary Judgment should be denied.

DELTA KEYSPAN, INC., N/K/A DELTA KEYSPAN, LLC,

By Its Attorneys,

_/s/ Allen Whitestone_
Allen Whitestone, Esq.
(BBO #526200)
Black, Cetkovic & Whitestone
200 Berkeley Street, 14th Floor
Boston MA 02116
Tel. (617) 236-1900
Fax (617) 536-2387

## CERTIFICATION

I hereby certify that I have mailed a copy of the within first class mail, postage prepaid on ____ day of January, 2005 to the following:

Edward F. Vena, Esq.
Vena, Riley, Deptula, LLP
250 Summers Street, 2nd Floor
Boston, MA 02210

Andrew J. Tine, Esq.
Haese, LLC
70 Franklin Street, 9th Floor
Boston, MA 02110

Jay S. Gregory, Esq.
Warren D. Hutchison, Esq.
Donovan Hatem LLP
Two Seaport Lane
Boston, MA 02210

John J. McNamara, Esq.
Eric Howard, Esq.
Domestico, Lane & McNamara, LLP
161 Worcester Road
Framingham, MA 01701

James J. Duane, III, Esq.
Edward Coburn, Esq.
Taylor, Duane, Barton & Gilman, LLP
111 Devonshire Street
Boston, MA 02109

Robert R. Pierce, Esq.
James F. Kavanaugh, Esq.
Pierce & Mandell, PC
11 Beacon Street
Boston, MA 02108

John H. Bruno, Esq.
Masi & Bruno
124 Long Pond Road
Plymouth, MA 02360

Alan Whitestone, Esq.
Black, Cetkovic & Whitestone
200 Berkeley Street
Boston, MA 02116

Eric H. Loeffler, Esq.

Cetrulo & Capone, LLP
Two Seaport Lane, 10th Floor
Boston, MA 02210

*/s/ Michele Charette*

# 2487135_v1