FILED
IN CLERKS OFFICE
JAN 21 P 2:48
U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS DEVELOPMENT FINANCE AGENCY<br>Plaintiff<br><br>v.<br><br>ADP MARSHALL, INC., a FLUOR DANIEL COMPANY and FIREMAN'S FUND INSURANCE COMPANY<br>Defendants<br><br>v.<br><br>ALLIED CONSULTING ENGINEERING SERVICES, INC., ANDOVER CONTROLS CORPORATION, R&R WINDOW CONTRACTORS, INC., and DELTA KEYSPAN, INC. n/k/a DELTA KEYSPAN, LLC, MADDISON ASSOCIATES, INC., UNITED STATES FIDELITY AND GUARANTY COMPANY FIDELITY AND DEPOSIT OF MARYLAND NATIONAL GRANGE MUTUAL INSURANCE COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, AMERICAN HOME ASSURANCE COMPANY, HARTFORD ROOFING COMPANY, INC. and SPAGNOLO/GISNESS & ASSOCIATES, INC.<br>Third-Party Defendants | C.A. NO. 04-CV-10203 PBS |

### AFFIDAVIT OF RAYMOND KEOUGH

I, Raymond Keough, upon oath and under the pains and penalties of perjury herein state the following:

1. At all times relevant hereto I was employed with the Third-Party Delta Keyspan, LLC ("Delta"), as a Senior Vice President.

2. I give this affidavit in support of Delta's Opposition to the Motion for Summary Judgment filed by the Defendant, Third-Party Plaintiff ADP Marshall, Inc. ("Marshall").

3. This affidavit is made on my personal knowledge as I had responsibility for the Project at issue in this litigation.

4. On or about January 19, 2001, Marshall and Delta entered into an agreement (hereinafter the "Delta Contract") whereby Delta would install the HVAC system of the Project. (The Delta Contract is attached as Exhibit 1 to Marshall's Motion for Summary Judgment).

5. The scope of Delta's work on the Project is more specifically defined in the Schedule of Work, Paragraph 18, attached to the Delta Contract. *See* Paragraph 18, Page 5 of 10 of the Schedule of Work.

6. Delta's work under the Delta Contract did not include the design of the HVAC system.

7. I have reviewed the allegations of problems related to the Project as set forth in the letter of September 6, 2002, by William Whelan, apparent agent of MDFA, to Marshall (Exhibit 2 of Marshall's Motion for Summary Judgment). The complaints therein are not the result of Delta's work on the Project.

8. Specifically, out of the 18 itemized problems with the Project listed in Mr. Whelan's letter, only items 5, 6, 13, and 16 remotely concern Delta's work.

2

9. The problem expressed in Paragraph 5 of Mr. Whelan's letter ("[t]he HVAC box in Room 111-1 is emanating a very load vibrating noise.") is not an issue in this litigation- as it has been "completed" by an Andover tech.

10. The problem expressed in Paragraph 6 of Mr. Whelan's letter ("Heating hot water appears to not be circulating properly."), likewise, is not directed at the work of Delta on the Project, but is an allegation of a design issue relating to the hot water pumps agreed upon by the parties to the Project- including Marshall.

11. The problem expressed in Paragraph 13 of Mr. Whelan's letter ("Chiller trips out when demand for chilled water is very low in the winter.") also is an allegation unrelated to Delta's work. The issue concerns the type of system specified for the Project and the amount of tenants in the building.

12. The problem expressed in Paragraph 16 of Mr. Whelan's letter ("End of the east wing has no HVAC supply air east of the fire doors.") is an allegation of a problem with the design of the system and is not related to Delta's installation of it.

13. The other items in Mr. Whelan's letter have nothing to do with Delta's work on the Project, but concern issues relating to engineering, electrical and carpentry.

14. Nothing in Mr. Whelan's letter is an allegation that Delta failed to perform according to drawings or specifications for the Project.

15. I have also reviewed the letter of Richard Comeau dated April 9, 2003. The issues contained in his letter are not complaints associated with Delta's performance of its work on the Project.

16. The items mentioned in paragraphs 1-3 of Mr. Comeau's letter concern the air intake louver sizes. The louver sizes were included in the Project specifications and drawings and were agreed upon by Marshall. The item mentioned in item 3 ("air intake depth sizing") was performed with approval from Marshall.

17. The items discussed in paragraphs 4 and 5 of Mr. Comeau's letter deal strictly with design, and not of Delta's performance.

18. The item discussed in paragraph 6 ("air conditioning load") is a design issue made between the designer and Marshall. Delta performed this work pursuant to the specifications for the Project.

19. Item 7 in Mr. Comeau's letter deals with air control valves which is not related to Delta's work.

20. The alleged problems mentioned in paragraph 8 of Mr. Comeau's letter are not against Delta's work on the Project. The exhaust ducts (subparagraph A) are sealed eternally. The exhaust ducts (subparagraph B) were installed according to the specifications contained in the drawings. Subparagraph C is an overall description of the design of the system.

21. The item in paragraph 9 is incorrect if it is directed at Delta. Delta did submit shop drawings for this Project.

22. The item of paragraph 10 is a *control* issue- which is not a concern of Delta.

23. The item contained in paragraph 11 is incorrect- Delta did perform the balancing and provided the report of it to Allied and Marshall.

24. The items mentioned in paragraph 12 regarding certain equipment being undersized is an allegation directed at the design of the system. Delta complied with the specifications and drawings relative to this issue.

25. The alleged problem mentioned in paragraph 13 is directed at the specifications and design of the system. Delta followed the specifications for the Project. Mr. Comeau is stating there that the client may want to upgrade to a more capable and expensive system.

Signed and sworn to under the pains and penalties of perjury on this 21st day of January, 2005.

_____
Raymond Keough

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Warwick_____, in said County on the 21st day of January, 2005, before me personally appeared Raymond Keough to me known and known by me to be the party executing the foregoing instrument and he acknowledged said instrument, by him executed to be his free act and deed.

_____
Notary Public
My Commission Expires: 12/2008

# 2524868_v1

5