Project No.:     110095.01

Contract No.:    110095.01-04

Consultant Phone No.  (508) 626-0282

Vendor No.     68899

Cost Code No(s).  8-15-000-0000

# ADP MARSHALL, INC.
### A FLUOR DANIEL COMPANY
### 75 Newman Avenue
### Rumford, Rhode Island 02916
### (401) 438-3500

# CONSULTANT AGREEMENT

Project Title:          Advanced Technology Manufacturing Center, Fall River, MA

Owner:                  Massachusetts Development Finance Agency

Architect/Engineer:     ADP Marshall, Inc.

Contract Price:         $91,000.00

Date of Contract:       August 15, 2000

This Agreement is made effective as of the date stated above by and between **ADP Marshall, Inc.**, a corporation licensed to practice professional design and related services in the State of Massachusetts with its principal place of business as stated above (hereinafter "Company") and **Allied Consulting Engineering Services, Inc.**, a corporation licensed to provide professional design and related services in the State of Massachusetts with a principal place of business at 76 Main Street, Framingham, MA 01702 (hereinafter the "Consultant").

Whereas, Massachusetts Development Finance Agency (hereinafter the "Owner") has entered into a prime agreement with ADP Marshall, Inc., whereas ADP Marshall, Inc. acts to provide professional design and related services in support of the Owner's Project as stated above (the "Project") to be located at Fall River, MA (the "Site"); and

Whereas Company and Consultant wish to enter into this Consultant Agreement to complete the design requirements for a portion of the Project to the extent as described in Attachment "A" set forth herein below.   In consideration of the mutual promises contained herein, Company and Consultant hereby agree as follows:

1.     **DEFINITIONS**
1.1    **Agreement Documents** - Collectively, this Consultant Agreement, all Attachments hereto and documents incorporated herein by reference constitute the "Agreement Documents." The terms of this Consultant Agreement shall control in the event of a conflict with other Agreement Documents, including any conflicting commercial terms and/or payment provisions stated in the Attachments . The Agreement Documents shall supersede all proposals, offers and/or counter offers between the parties except to the extent that may be expressly incorporated herein. Attachments included in the Agreement Documents may include the following:

Attachment "A" - Scope of Consultant's Services and Milestone Dates
Attachment "B" - Schedule of Fee Payments (Not Applicable)
Attachment "C" - Invoicing Format
Attachment "D" - Consultant's Hourly Rates for Extra Services  (See Attachment "A")

1.2    **Basic Design Documents** - *"Basic Design Documents"* means those documents prepared by the Company that have been provided to Consultant for purposes of carrying out the design and related services as defined herein.
1.3    **Services** - *"Services"* means the services to be performed by the Consultant as described in and reasonably inferable from the Agreement Documents as described in Section 1.2 above, including Attachment "A" and Article 2 below.
1.4    **Extra Services** - *"Extra Services"* means those services, if any, in addition to the Consultant's initial scope of Services described in Section 1.3 above that have been mutually agreed to by the parties and are performed by the Consultant after receipt of Company's prior written approval.
1.5    **Reimbursable Expenses** - *"Reimbursable Expenses"* means those expenses enumerated in Section 6.3 of this Agreement that may be reimbursable to the Consultant while performing Services.



1.6 **Sub-Consultants** - The term *"Sub-Consultants"* shall mean independent design Sub-Consultants retained by the Consultant to assist in performing the Services that have been approved in advance and in writing by Company. All references to the Consultant's Sub-Consultants herein shall be inclusive of their respective sub-consultants of any tier.

1.7 **Contract Documents** - The *"Contract Documents"* shall be the drawings and specifications that are prepared by the Consultant and its Sub-Consultants as part of its Services and have been accepted by the Company.

1.8 **Prime Agreement** - The *"Prime Agreement"* is the separate agreement entered into between the Owner and ADP Marshall, Inc. for professional design and related services for the Project.

1.9 **Work** - *"Work"* means the services performed by ADP Marshall, Inc. pursuant to the Prime Agreement in implementing the project.

## 2 CONSULTANT'S SCOPE OF SERVICES

2.1 **Representations**

    2.1.1 Consultant shall perform all of the design and related Services that are specified or reasonably inferable from the requirements set forth in the Agreement Documents, including Attachment "A" and this Article 2. As further described in the Attachment "A" hereto, the Consultant's Services shall be performed in phases (*"Phases"*) with milestone completion dates (*"Milestone Dates"*) as described therein.

    2.1.2 Consultant acknowledges and agrees that, notwithstanding that the Company will remain as the design professional of record for the Project, Consultant is responsible for completing all of its Services, including preparation of any Contract Documents within its Services, in a manner that complies with all requirements of the Prime Agreement and the Agreement Documents. Consultant confirms that it has reviewed the applicable requirements of the Prime Agreement as designated by the Company and hereby confirms that all such requirements are deemed incorporated by reference into the Agreement Documents. Consultant further confirms that all such requirements of the Prime Agreement shall be included within any Contract Documents prepared by Consultant and otherwise complied with as part of the Services.

    2.1.3 Consultant's Services shall be carried out by personnel who are experienced, skilled and competent in their respective areas of expertise. Consultant represents that it is duly licensed (both business and professionally) and legally authorized to perform the Services contemplated by this Agreement in the State of Massachusetts and undertakes to furnish its best skill and judgment and to cooperate with Company in furthering the best interests of Owner, Company, and the Project.

    2.1.4 Consultant agrees that all Services performed hereunder, shall be in compliance with all applicable local, state and federal laws, regulations, restrictions and requirements of all governmental and quasi-governmental authorities, utility companies, fire underwriters and other agencies and organizations having jurisdiction over the Services, including all local building and safety requirements. It is provided, however, that Consultant shall not enter into negotiations with any governmental authority or agency without obtaining Company's prior written consent.

    2.1.5 Consultant undertakes to provide Company with detailed designs, Contract Documents, construction observation services, and other services suitable for their intended purpose. Such Services shall be completed in a timely manner, and to the extent necessary to enable Company to achieve completion of Project in accordance with the mutually agreed completion dates, including any Milestone Dates set forth in Attachment "A" hereto.

    2.1.6 The Contract Documents prepared by the Consultant shall be fully coordinated with all other Contract Documents on the project whether prepared by the Consultant, the Company, or by another consultant. This shall include the integration of the design requirements contained in the Company's Basic Design Documents, the design requirements contained in the Prime Agreement, information developed and provided by the Consultant and its Sub-Consultants, and any supplemental design information provided from time to time by the Company.

    2.1.7 Consultant shall not: (a) undertake any activity or employment; or (b) have any significant undisclosed financial or other interests; or (c) accept any contributions, if it would reasonably appear that such activity, employment, interest or contribution could compromise the Consultant's professional judgment or prevent the Consultant from serving the best interests of Owner, Company, and the Project.

    2.1.8 Consultant acknowledges that it has provided services to Company at its best corporate rates.

2.2 **Consultant's Personnel**

    2.2.1 Michael Zimmerman will be Consultant's Principal in charge of all Services to be performed by Consultant under the terms of this Agreement and shall be authorized to act on Consultant's behalf with respect to the Services. All decisions, notices and directives issued by Consultant's Principal shall be binding upon Consultant with respect to this Agreement.

    2.2.2 Consultant's personnel categories and hourly rates set forth in Attachment "D" hereto are approved by Company to be utilized by Consultant when performing Extra Services on a "Time and Expense" basis pursuant to Section 6.2 below. As a condition of Company's duty to pay for any Extra Services, Consultant agrees to identify in advance and obtain Company's prior written approval for all personnel to be used for each Extra Service assignment as well as any and all additional personnel categories, if any, that Consultant may wish to use in carrying out any approved Extra Services hereunder. Rates charged by Consultant's Sub-Consultants for each Extra Service assignment performed on a Time and Expense basis shall in no case



2.2.3 exceed the rates set forth in Attachment "D" and shall also require Company's written approval prior to commencing performance of any Extra Services.

2.2.4 Consultant accepts sole responsibility for the accuracy and adequacy of its design, status reports and the Contract Documents prepared by its employees and Sub-Consultants performing the Services. This shall include responsibility for compliance with all applicable codes and other legal regulations, the checking and approval of all shop drawings, materials and samples as well as the adequacy of any tests conducted under the direction of the Consultant that are required within the Scope of Services set forth in this Agreement.

2.2.5 Except for those independent Sub-Consultants which have been identified in writing by Consultant and approved in writing by Company, Consultant confirms that all of its personnel are full time employees for purposes of reporting and paying federal income taxes, all federal and state payroll and social security taxes, unemployment taxes, workers' compensation and any and all similar taxes and social programs applicable to full time employees.

2.2.5 The assignment of all personnel engaged to perform Consultant's Services is subject to the approval of Company. Company may, for reasonable cause, require the removal or reassignment of particular members of Consultant's personnel.

2.3 **Coordination of the Services** - In carrying out its coordination responsibilities, Consultant agrees to continuously coordinate its activities with the Company, and Company's other Consultants. This shall include taking all steps reasonably necessary to assure that all Services performed by Consultant hereunder are completed in a timely manner without causing delay, hindrance or interference with the activities of the Company, or Company's other Consultants.

2.4 **Examination for Conflicts** - Upon receipt of the Basic Design Documents from Company, Consultant shall promptly use due diligence in reviewing such documents to ascertain the existence of any errors, discrepancies, omissions, duplication or conflicts within the Basic Design Documents and between the Basic Design Documents and the requirements of the Prime Agreement. If Consultant discovers or otherwise becomes aware of any such errors, discrepancies, omissions, duplications or conflicts during such initial examination, or at any time during the course of the Work, Consultant shall immediately notify Company in writing and obtain written instructions from the Company before proceeding with any part of the Services affected thereby. If Consultant performs any Services relating to any such errors, discrepancies, omissions, or duplications, except in accordance with such written instructions obtained from Company, Consultant shall bear all costs of correction and adverse scheduling impacts attributable thereto.

2.5 **Permits and Licenses** - Consultant shall, without additional compensation, keep current all governmental permits (other than Building Permits), certificates and licenses (including professional licenses) necessary for Consultant to perform its Services.

2.6 **Inspection and Access** - Company shall at all times have access to the Consultant's work product developed under this Agreement wherever in preparation, and Consultant shall facilitate such access and the inspection thereof. Any review, inspection, lack of inspection, approval or acceptance by Company shall not be deemed to be a waiver of any of its rights relating to Consultant's performance standards and/or indemnification responsibilities contained herein, or of Company's right to subsequently reject defective Services.

2.7 **Monthly Reports** - Consultant shall submit a detailed activity report to Company not less than once a month describing the progress of the Services, including the status of Consultant's progress in meeting any mutually agreed Milestone Dates set forth in Attachment "A".

2.8 **Minutes of Meetings** - Consultant shall routinely and promptly provide minutes of all meetings attended by the Consultant during the performance of the Services.

2.9 **Limitations of Consultant's Responsibilities**

2.9.1 Notwithstanding anything in this Agreement which may indicate otherwise, Consultant shall not be deemed to have control over or be in charge of acts or omissions of Company or its other design consultants or the Owner, or its subcontractors, vendors or their respective agents or employees, or of any other persons performing portions of Work on behalf of the Owner.

2.9.2 Nothing contained in this Consultant Agreement or the Prime Agreement shall establish privity of contract or create third party beneficiary rights between the Consultant and the Owner; or between the Consultant and any subcontractors or vendors to the Owner pursuant to the Prime Agreement; or between the Consultant and any of Company's other independent consultants.

2.9.3 Notwithstanding anything which may appear to the contrary in the Agreement Documents, the parties do not intend and the Consultant's Services shall not be construed as providing any legal services, representation, or opinions on any matters of law.

3 **STANDARDS AND REMEDIES**

3.1 **Standards of Performance** - Consultant shall perform its Services expeditiously and in accordance with the highest prevailing standards of professional care for nationally recognized architects and registered engineering professionals regularly engaged in the design of state of the art Project described herein. Notwithstanding any review, approval, acceptance, or payment for any and all of Consultant's Services by the Company or termination of this Agreement, the Consultant shall remain responsible for the professional and technical accuracy of all of the Consultant's Services and deliverables in meeting the requirements described in this Consultant Agreement and the Prime Agreement.

3.2 **Company's Remedies** - In the event Consultant fails to perform any of its Services in a manner satisfactory to the Company and in accordance with the standards set forth in Section 3.1 above, Consultant shall perform again, at its

sole cost and expense, any and all of Consultant's Services that are defective as a direct or indirect result of such failure. Consultant shall likewise be responsible for the additional personnel costs of the Company and Company's other consultants, if any, arising out of such defective Services. This paragraph does not limit Company's rights and remedies nor Consultant's liabilities for the Services performed pursuant to the terms and conditions of this Agreement.

4    COMPANY'S RESPONSIBILITIES

4.1    Relevant Information - To the extent relevant to the Consultant's Services and in Company's possession, Company shall provide Consultant with information including the following: (a) the latest Basic Design Documents required for completion of the Services; (b) any previous geotechnical surveys made available by Owner; (c) any reports made available by Owner or otherwise known to the Company describing known underground utilities, prior structure foundations or other obstructions which might hinder construction of the Project and/or impact performance of the Services; and (d) any reports made available by Owner or otherwise known to Company concerning the location and identity of any oil, hazardous, toxic, radioactive or asbestos materials in, on or near the Site. Consultant shall promptly report to Company any error, inconsistency or omission which it discovers in any such documents.

4.2    Company's Authorized Representative - Company has designated Robert Greetham as its Project Representative authorized to act on Company's behalf with respect to the Consultant's Services. Consultant shall submit its Contract Documents, reports, analyses and other documents to the Project Representative for review and comments. Any requests for Extra Services shall be submitted to the Project Representative for review and written approval prior to commencement. The Project Representative shall promptly render decisions as required, including issuing directives from the Company to facilitate the progress of the Services.

5    PERFORMANCE SCHEDULE

5.1    Performance Schedule  - Except for the implementation of Article 9 below or unless otherwise agreed to by Company in writing, Consultant shall commence and complete the performance of its Services under this Contract in accordance with those dates as set forth in Attachment "A", unless a schedule extension has been approved by the Company.

5.2    Timely Performance - Consultant acknowledges that TIME IS OF THE ESSENCE and that Company's business interests will suffer substantial losses unless Consultant's Services are completed in a timely manner. Consultant's failure to timely complete its Services in accordance with Section 5.1 above shall be a material breach of this Agreement

6    COMPENSATION AND PAYMENT

6.1    Fixed Fee - In full consideration for the performance of the Services in strict accordance with the requirements of this Agreement, Company shall pay Consultant the lump-sum amount of as set forth herein above (the "Fixed Fee"), subject to the Owner's payment to the Company under the Prime Agreement. Subject to Extra Services which are mutually agreed to between the parties in advance and in writing, the Fixed Fee shall be Consultant's sole and total compensation for all costs, overheads and profit, including but not limited to all cost of all general conditions, insurance premiums, federal, state, and local statutory payroll and benefit taxes, income taxes and sales, use and excise taxes which relate to its Services hereunder. The Fixed Fee shall be allocated by Phases as set forth in Attachment "B".

6.2    Compensation for Extra Services - Subject to the Consultant's compliance with Article 10 below and to the extent approved in advance and in writing by Company, payment for Extra Services shall be computed on either: (a) a Time and Expense basis measured by the Schedule of Hourly Rates listed in Attachment "D", without mark-ups, plus Reimbursable Expenses directly related to the Extra Services, without mark-ups; or (b) on a lump sum basis as may be mutually agreed upon by the parties in advance and in writing. Lump-sum amounts for Extra Services shall be inclusive of all Reimbursable Expenses.

6.3    Reimbursable Expenses - Reimbursable Expenses shall be subject to the Owner's payment to the Company under the Prime Agreement and shall be limited to actual expenditures for the items listed below without mark-ups and which are incurred by the Consultant only during the direct performance of any Services performed on an Expense basis as follows:

6.3.1    Actual costs for transportation and travel expenses in connection with out-of-town travel authorized by Company, in accordance with Attachment "A" and with automobile mileage rates for out of town travel not exceeding the IRS accepted rate per mile;

6.3.2    Long distance telephone calls at actual cost;

6.3.3    Facsimile transmission costs at One Dollar ($1.00) per page within the U.S. and Two Dollars ($2.00) per page outside the U.S., and with no charges for incoming facsimiles;

6.3.4    Fees approved by Company and paid by Consultant for securing approval of authorities having jurisdiction over Consultant's Services provided;

6.3.5    Photocopy reproductions at rates not exceeding ten cents ($0.10) per copy;

6.3.6    Postage, shipping and air courier costs at actual cost; and

6.3.7    Expense of overtime hours requiring higher than regular rates, when authorized in advance and in writing by Company.

Note: Reimbursable Expenses relating to Consultant's Services shall not in any event exceed the pre-approved amount without the Company's Project Representative's prior written consent.

6.4     **Progress Payments** - Consultant shall submit monthly Applications for Progress Payment in accordance with the Invoicing Formats set forth in Attachment "C" that separately itemize the following:

      6.4.1     The relevant Fixed Fee progress payment due in accordance with Attachment "B" - Schedule of Fee Payments.

      6.4.2     Separate line item entries that identify all Extra Services which were approved in advance and in writing by Company and which were completed during the preceding month. Consultant's submittal for these extra costs shall include a copy of Company's prior written approval for each item of Extra Services. Except for Extra Services performed on a mutually agreed lump-sum basis, Consultant shall also submit: (a) time sheets signed by Consultant's Representative on a daily basis which identify Consultant's personnel by name, their Hourly Rates as specified in Attachment "D" and the number of hours worked on each separate item of approved Extra Service; and (b) an itemization of all Reimbursable Expenses attributable to each separate item of Extra Service performed and incurred during the preceding month.

6.5     **Monthly Payments** - Within thirty (30) days after receipt of approved Consultant's Application for Progress Payment in compliance with the requirements of Section 6.4 above and subject to the applicable payment from the Owner that includes payment for the Consultant's Services then payable, Company shall pay the amounts approved in accordance with this Article 6 without retention, including Fixed Fee progress payments and amounts for Extra Services during the preceding month, if any.

6.6     **Final Payment** - Final payment shall be made within thirty (30) days of the satisfactory completion of Consultant's Services hereunder subject to the applicable payment from the Owner that includes the amounts attributable to final payment for the Consultant's Services.

7     **INDEMNIFICATION**

7.1     **Indemnified Parties** - The term *"Indemnified Parties"* means Company, Owner, and each of their respective subsidiary companies, affiliated companies and parent companies of every tier, and each of its directors, officers, employees, agents, representatives and assignees permitted herein.

7.2     **Consultant's Duty to Indemnify** - Consultant shall defend, indemnify and hold each of the Indemnified Parties harmless from and against any claims, demands, causes of actions, damages, liabilities, losses, costs and expenses, including reasonable attorneys' fees, arising out of or relating to:

      7.2.1     Actual or asserted infringement, improper appropriation, or use of trade secrets, proprietary information, copy rights, or patents; and

      7.2.2     Injury to or death of persons (including the employees of the Indemnified Parties, Consultant and its sub-tier consultants) or damages to or loss of property (including the property of the Indemnified Parties, Consultant and its sub-tier consultants) arising directly or indirectly out of the acts or omissions to act of Consultant or its sub-tier consultants, or their respective employees or agents, or others for whom the Consultant is legally liable, during the performance of the Services; and

      7.2.3     Failure by Consultant to comply with any applicable law, regulation, or statute, or with the terms of this Agreement.

7.3     **Defense Costs** - Consultant's defense and indemnity obligations shall include the duty to reimburse any attorneys' fees and expenses incurred by Company or Owner for legal actions to enforce the Consultant's indemnity obligations.

8     **INSURANCE**

8.1     **Limitations** - Commencing with the performance of the Services hereunder, Consultant shall provide, pay for and maintain in effect the following types and minimum amounts of coverage for the full duration of this Agreement. All such insurance provided by Consultant shall be primary insurance and shall not be considered contributory insurance with any insurance policies of Company or any of the other Indemnified Parties.

      8.1.1     Worker's Compensation Insurance System coverage in accordance with the laws of the State of which the Project is located in or worker's compensation or similar laws of the state, territory, province, or political subdivision having jurisdiction over the employee, and Employer's Liability coverage with a minimum limit of liability of $1,000,000 for each occurrence.

         This coverage must include:

         (a)     Coverage for all states in which operations are conducted; and

         (b)     Policy must be endorsed to provide sixty (60) days' notice of cancellation to Company.

         Employer's Liability coverage must include:

         (a)     $1,000,000 bodily injury for each accident;

         (b)     $1,000,000 bodily injury by disease for each employee; and

         (c)     $1,000,000 bodily injury by disease aggregate.

      8.1.2     Automobile Liability insurance covering use of all owned, non-owned, and hired vehicles with a minimum combined single limit of liability of not less than One Million Dollars ($1,000,000) per occurrence for bodily injury and property damage. This policy shall be endorsed to name Company and all other Indemnified Parties defined in Section 7.1 above as additional insureds.

      8.1.3     Commercial General Liability Insurance on an occurrence basis covering bodily injury and property damage (including the property of the Indemnified Parties) with minimum limits of Two Million Dollars ($2,000,000) combined single limit, with blanket contractual liability coverage, completed operations, independent



MGM     CON

contractors, broad form property damage, personal and advertising injury, cross liability and severability of interests. This coverage must included the following:

    (a)    Policy to be endorsed to provide aggregate limits "per project" and "per location";

    (b)    Policy must name Company and all of the other Indemnified Parties defined in Section 7.1 above as Additional Insureds on a primary basis;

    (c)    Coverage for the full limits required must be primary to any coverage purchased by or maintained by or on behalf of the Additional Insureds; and

    (d)    Policy must be endorsed to provide thirty (30) days' notice of cancellation to Company.

8.1.4    Professional Liability Insurance naming Consultant as the insured in an amount of not less than One Million Dollars ($1,000,000) for each claim with an annual aggregate of Two Million Dollars ($2,000,000) per project, which shall include the coverage for attorney fees and investigation. The policy shall be subject to Company's review and approval and cover all aspects of the design of the Project that are within Consultant's Scope of Services. Such policy shall cover claims on a "claims made" basis arising out of any act or omission of Consultant, its employees and Sub-Consultants and of any other person for whose acts or omissions Consultant is legally responsible for that occur during performance of Services in a professional capacity. If Consultant should terminate such coverage at any time before three years (3) after acceptance or termination of Consultant's Services, Consultant shall obtain Extended Reporting Period Coverage ("tail cover"), for a period of not less than three years (3) from the date of Consultant's last Services.

8.1.5    Valuable Papers Insurance in an amount sufficient to cover the restoration of all documents, analyses and reports prepared by the Consultant pursuant to this Agreement, including plans, drawings, specifications, Construction Documents, computer files and other related documents in the event of loss or destruction. This policy shall be endorsed for coverage to be on a per project basis and to name Company and the Indemnified Parties defined in Section 7.1 above as additional insureds.

8.2    **Waiver of Subrogation** - Consultant shall obtain and provide waivers of subrogation against Company and all other Indemnified Parties as named in Section 7.1 above and their respective officers, affiliates, employees, directors, and agents, under Consultant's insurance coverage provided pursuant to this Article. Evidence of such waiver satisfactory in form and substance to Company shall be stated in the Certificates of Insurance provided pursuant to Section 8.4 below.

8.3    **Other Provisions** - The coverage's required above as well as any other coverage that Consultant may consider necessary are the Consultant's sole responsibility and shall not affect Consultant's liability as stated in this Agreement, including any deficiency in the coverage or policy limits. The cost of all premiums and deductibles shall be for the account of the Consultant and not subject to reimbursement by Company. All deductibles and self-insured retention amounts must be acceptable to and approved in writing by Company.

8.4    **Certificates of Insurance** - When required to be obtained by Consultant, policies required in this Article 8 shall be placed with insurance companies having an A.M. Best Company rating of A or better, are licensed to do business in the State which the Project is located and are otherwise acceptable to Company. Before commencing performance of the Services, Consultant must furnish Certificates of Insurance in a form satisfactory to Company. Certificate shall include all endorsements specified in this Article 8 and evidence all insurance required pursuant to this Article 8 are in force. Such Certificates for each policy shall include the following information:

8.4.1    State the effective expiration dates of the above policies;

8.4.2    Provide that not less than thirty (30) days' written notice will be given to Company prior to any cancellation, non-renewal or restrictive modification being made to any of the policies and state that a waiver of subrogation endorsement has been attached to all policies;

8.4.3    Provide full disclosure of any deductibles and/or self-insured retention;

8.4.4    State that Consultant's policies are primary to policies provided by Company and the Indemnified Parties and list Company and all other Indemnified Parties as additional insured on all coverage's except for Worker's Compensation Insurance System and Automobile Liability Insurance;

8.4.5    State exclusions to the policies that are not part of standard form coverage;

8.4.6    Show Company (at address stated above) as the Certificate Holder and shall be delivered to:

    Attn: Ms. Pamela Paradis
    ADP Marshall, Inc.
    75 Newman Ave.
    Rumford, RI 02916

    With copy to:

    Mr. Robert Greetham
    ADP Marshall, Inc.
    75 Newman Ave.
    Rumford, RI 02916



MGM   CON

9    CANCELLATION, TERMINATION AND SUSPENSION

9.1    **Suspension of the Services** - Company may, by written notice to Consultant, suspend further performance of the Services and later may, by written notice to the Consultant, withdraw all or part of the suspension. Any proposed changes to the scheduled time of completion of the Services resulting from said suspension must be submitted by Consultant to Company in accordance with the provisions of Article 10, Claims.

9.2    **Cancellation for Convenience** - Company shall have the unrestricted right to cancel the performance of all or any part of the Services by written notice. In such case, Consultant shall immediately discontinue performance of the Services on the date specified in such notice, and shall preserve its work in progress pending disposition instructions by Company. Consultant shall recover from Company the actual costs of all Services satisfactorily performed prior to the date of cancellation as full payment for such cancelled Services, subject to provisions of Section 6.5 of this Agreement. Consultant hereby waives any and all claims for anticipated profits, lost overheads and/or other consequential costs arising out of any cancellation.

9.3    **Termination for Cause** - In the event that Consultant defaults in the performance of any obligation to be performed by it under this Agreement and shall fail to correct such default within five (5) working days after written notice thereof from Company, Company may, without prejudice to any other rights or remedies Company may have, hold in abeyance further payments to Consultant and/or terminate this Agreement by written notice to Consultant specifying the date of termination. In the event of such termination, Company may take over and finish the Services by whatever method Company may deem expedient at Consultant's sole expense.

10    CLAIMS

10.1    **Timely Notice Requirements** - Consultant shall give Company written notice entitled *"Notice of Claim"* not later than within three (3) working days after any occurrence of an event being relied upon by Consultant as the basis for Consultant's *"Claim"*. Such Notice shall state whether the Consultant is seeking an increase in the Fixed Fee or an increase in the time of performance set forth in Section 5.1 above, or both.

10.2    **Timely Submittal Requirements** - Within ten (10) working days after the occurrence of the event being relied upon by Consultant as the basis for its Claim, Consultant shall provide Company with a written statement describing all relevant facts and contractual provisions supporting the Consultant's Claim in detail. Consultant's submittal must include Consultant's detailed estimate of extra lump-sum costs or costs on a Time and Expense basis pursuant to Section 10.3 below and/or the increase or decrease in the scheduled time of performance of the Services resulting therefrom pursuant to Section 10.4 below.

10.3    **Time and Expense Extra Work** - Company may in its sole discretion direct that any proposed Extra Services be performed on a Time and Expense basis. In all cases where Company has advised Consultant that any proposed Extra Work will be performed on a Time and Expense basis, Consultant's submittal shall include the proposed names and all-in hourly rates of Consultant's personnel that will perform the Extra Services.

10.4    **Claims for Additional Time** - In the event that Consultant submits a Claim for a time extension, Consultant shall have the full burden of providing detailed narratives and CPM analyses that establish any such delays were solely caused by improper acts or omissions by the Owner or Company, or by reason of circumstances between the control of the parties. Claims for additional time shall include all detailed CPM analyses as may be required, in Company's reasonable opinion, to support the Claim. Consultant's only right, and Company's only liability, with respect to delays shall be an extension of time equal to the number of days of the delay, and Consultant expressly waives any right to claim additional compensation in the event of any such delays in providing the Services.

10.5    **Waiver of Claim Rights** - Consultant understands that its rights to pursue increases in the Fixed Fee and/or additional time for completion of its Services as contemplated in this Article 10 are strictly dependent upon the Consultant's compliance with the timely notice requirement of Section 10.1 and the submittal requirements of Sections 10.2, 10.3 and 10.4. Any failure to timely comply with Sections 10.1 and 10.2 or to timely supply Company with the substantiation information required by Sections 10.3 and 10.4 above shall constitute a full waiver and release by Consultant of its rights to pursue Claims relating to the Services.

10.6    **Evidence of Settlement** - Notwithstanding any negotiations, or purported verbal agreements or assertions of waivers of contractual rights between the parties, Company shall not be responsible for any adjustments in the Fixed Fee or the Consultant's time of performance unless agreed to in writing by Company. To have any force or effect, all agreements relating to extra costs and/or increases in the time of performance must be mutually agreed to by the parties and evidenced by a "Change Order" document signed by both parties.

10.7    **Uninterrupted Prosecution of the Services** - Notwithstanding anything in this Agreement that might indicate otherwise and regardless of whether or not a Claim is unresolved or disputed, the Consultant shall in no case halt or suspend all or any part of the Services without Company's prior written consent. Unless so agreed to in writing by Company, Consultant shall remain bound to perform the Services pursuant to the requirements of this Agreement, without delay, and to achieve the successful and timely completion of the Services.

11    COMPANY'S AUDIT RIGHTS - Consultant shall maintain, and require its employees and agents and all others for whom the Consultant is legally liable under this Agreement to maintain, detailed records and accounts pertaining to all of its Services, including Extra Services, Reimbursable Expenses and personnel hours expended during the course of such Services and for a period of at least two (2) years after receipt of final payment. Such financial records shall be kept in accordance with generally accepted accounting principles and shall be made available to Company, Owner and their respective authorized representatives for purposes of inspection, copying and audit promptly after receipt of

MGM    CON

written notice from Company. It is provided, however, that such audit access shall not extend to those Services performed solely on a lump-sum basis unless such lump-sum Services have, in Company's reasonable opinion, a direct and proximate relationship to any pending Claim by Consultant for additional compensation and/or additional time for completing performance, or an action by Company based upon material breach of contract by Consultant in fulfilling its scope of Services as a whole.

12      GENERAL PROVISIONS

12.1    Assignment and Subcontracting - This Agreement is personal to the Company and Consultant. Consultant shall not subcontract or assign the performance of any portion of these Services without the prior written consent of Company. Any purported assignment by Consultant without such consent shall be null and void. Consultant hereby agrees that Company may assign this Agreement to Owner or Owner's designated representative.

12.2    Propriety Information - Company considers all information pertaining to the Services or the Project to be confidential and proprietary unless otherwise stated to Consultant in writing. Consultant shall refrain from disclosing any such information without Company's prior written consent, including any information that is prepared or developed by or through Consultant, Company or Company's other Project Consultants or Sub-Consultants of any tier.

12.3    Ownership and Use of Consultant's Documents - All documents prepared by Consultant as part of the Services, including all original reports, drawings, renderings, specifications, estimates, field notes and similar data prepared by Consultant in furtherance of the Services shall be the property of Company. Consultant hereby assigns to Company all documents prepared by Consultant, its employees and agents, or others for whom the Consultant is legally liable under this Agreement, including all copyright rights. At the time of completion, or upon an earlier cancellation or termination of this Agreement, Consultant shall promptly on demand turn over to Company the originals of all such documents. Consultant agrees to execute all documents and to take all steps that Company deems necessary or desirable to protect Company's ownership and property rights of these materials. Consultant may retain one (1) set of reproducible copies thereof for information and reference purposes only.

12.4    Advertising and Promotional Materials - Consultant hereby agrees not to publish or use the name of the Owner, Owner's premises, or any variation thereof, or the name "ADP Marshall, Inc.", or any logos used by Owner or Company in connection with any of Consultant's business operations, promotional materials, press releases without the advance written approval of both the Owner and Company. All requests for approval for promotional purposes will be submitted to Company for further handling.

12.5    Independent Contractor - Consultant shall at all times be an independent contractor and have sole responsibility for and control over all means, methods, techniques, sequences and procedures for coordinating and scheduling its Services to achieve the requirements of this Agreement. Nothing in this Agreement shall be deemed to imply or represent that the Consultant, its employees and agents, or others for whom the Consultant is legally liable under this Agreement are the agents, representatives or employees of Company or other Indemnified Parties. Consultant further agrees that it will be solely responsible for the payment of all taxes and social benefits required by law to be paid for or on behalf of its employees, agents and representatives.

12.6    Resolution of Disputes

12.6.1  *Disputes Not Involving the Owner* - All claims, disputes and other matters in question arising out of or relating to this Agreement or the breach thereof, and not involving the Owner, shall be decided by a court of competent jurisdiction in the State of Massachusetts and not by arbitration unless the parties mutually agree otherwise. The existence of any claim, dispute, arbitration or judicial proceeding shall not relieve Consultant from its obligation to properly perform its Services as set forth herein. Neither party shall initiate a judicial proceeding, and the applicable statute of limitations shall not commence to run, until the date of substantial completion of Consultant's Services or any termination of this Agreement, whichever occurs first. Consultant hereby knowingly, voluntarily and intentionally waives (to the extent permitted by applicable law) any right it may have to a trial by jury of any dispute arising under or relating in any way to this Agreement and agrees that any such dispute may, at Company's option, be tried before a judge sitting without a jury.

12.6.2  *Disputes Involving the Owner - Mandatory Arbitration*

12.6.2.1    In the event that the Company is required to be a party to an arbitration that is directly or indirectly relevant to any dispute with Consultant, Consultant hereby agrees that Company may at their election notify Consultant in writing that any such dispute shall be subject to the binding arbitration provisions set forth in the Prime Agreement. In such event, the parties shall be bound to reach a full and final resolution of such disputes pursuant to the arbitration provisions in the Prime Agreement and without regard to Subsection 12.6.1 above.

12.7    Governing Law - The laws of the State of Massachusetts shall govern the validity, construction, performance and effect to this Agreement.

12.8    Binding Effect - Company and Consultant, respectively, bind themselves and to the extent applicable, their partners, successors, assigns and legal representatives to fulfill all obligations contained in this Agreement. The provisions of this Agreement that by their nature are intended to survive the termination, cancellation, completion or expiration of this Agreement shall continue as valid and enforceable obligations of the parties notwithstanding any such termination, cancellation, completion, or expiration.

12.9    Enforceability - The invalidity or non-enforceability of any provision of the Agreement shall not impair or affect the validity or enforceability of any other provisions. In the event that any one or more provisions are determined to be

MGM          CON

unenforceable or void, the remainder of the Agreement shall remain in full force and effect. In the event of a waiver or series of waivers by either party of a breach or default of any provision of this Agreement, such waiver(s) shall not constitute or be evidence of a waiver of any future breach or default of the same provision or any other provisions.

13    NOTICES - All notices relating to termination, cancellation for convenience, suspension or material breach shall be sent to the parties at the addresses stated below, by registered or certified mail. All other notices may be sent by regular mail. Notice by facsimile transmissions shall be effective upon receipt, but must be confirmed by registered, certified or regular mail, as is appropriate to the type of notice. Either party hereto may specify to the other party a different address for the giving of notices.

13.1    **Notices to Company** - All notices to Company shall be sufficient when sent as stated above and addressed as follows:

ADP Marshall, Inc., Attn: Mr. Rob Greetham
75 Newman Ave.
Rumford, RI  02916
Facsimile No. 401/438-2202

13.2    **Notices to Consultant** - All notices to the Consultant shall be sufficient when sent as stated above and addressed as follows:

Allied Consulting Engineering Services, Inc.
Attn: Mr. Michael Zimmerman
76 Main Street
Framingham, MA  01702
Facsimile No. (508) 626-0301

14    ENTIRE AGREEMENT - This Agreement represents the entire and integrated agreement between Company and Consultant and supersedes all prior negotiations, representations or agreements, whether written or oral. This Agreement shall not be changed or modified except by written amendment signed by officers of the parties.

15    ACKNOWLEDGMENTS - The parties acknowledge and agree that the terms and conditions of this Agreement, including but not limited to those relating to waivers, allocations of and releases from indemnities against and/or limitations of liability, have been clearly identified and freely, fairly and thoroughly negotiated by mutual agreement so that both parties have actual knowledge of the intent and effect of such terms and conditions. Each party acknowledges that in executing this Agreement, they rely solely on their own judgment, belief and knowledge as well as such advice as may have been received from their respective attorneys and counselors. The parties further agree that no provision in this Agreement shall be interpreted for or against any party because that party, or its attorney, drafted the relevant provision.

IN WITNESS WHEREOF, the Consultant and the Company have executed this Agreement by their duly authorized representative on the dates set below their names.

ADP MARSHALL, INC.

Mark G. Magnan
Director, Contracts

Date: 11/16/00

ALLIED CONSULTING ENGINEERING SERVICES, INC.

By: _____

Title: Vice President + Clerk

Date: 11-15-00

State of Incorporation or Registration, if corporation or partnership: MA

MGM    CON

# Scope of Work
## MASSACHUSETTS DEVELOPMENT FINANCE AGENCY
## ADVANCED TECHNOLOGY MANUFACTURING CENTER
## FALL RIVER, MA - JOB NO. 110095.01
## ALLIED CONSULTING ENGINEERING SERVICES, INC.
## CONSULTANT AGREEMENT NO. 110095.01-04

1.   **BASIS OF THE WORK** – The Consultant will provide **HVAC Engineering Design Services** on a Lump Sum Basis for the Project.   The project is a new 65,000 square foot prefab two-story building with a mechanical penthouse, housing wet chemistry labs, dry labs, office, conference and mechanical spaces as described in greater detail in, and all work shall be in accordance with, the Symmes Maini & McKee Drawings and Appendices dated May 5, 2000, a copy of which is included herein by reference as fully as if herein set forth at length.

2.   **ADDITIONAL CLARIFICATIONS** - The following items are mutually understood and agreed:

   A.   The Consultant's Basic Services will be divided into three (3) phases and the Consultant will perform or provide all required engineering and administrative support services for the design of the HVAC systems as more fully described below:

   1)   **Program Verification**

   a.   Review "Request for Proposals" scope specifications and drawings and value engineering log to determine and define the contract scope.

   b.   Attendance at meetings with the Owner's representatives as may be required to refine and fully define the scope of the HVAC work and alternatives.

   c.   Attendance at "Design Progress" meetings as required.

   d.   Preparation of HVAC systems project issues.

   2)   **Design Development and Construction Documents**

   a.   Preparation of Long Lead procurement packages for HVAC systems, as may be applicable.



Page 1 of 4                     Attachment "A"                     MGM     CON

b.  30% Detailed Design Mechanical Systems drawings showing:

    1.  Make-up air (MAU) units.
    2.  Water chiller(s) and boiler(s).
    3.  Chilled water and hot water pumps.
    4.  Duct routes with preliminary sizing information.
    5.  Acid exhaust duct routes with preliminary sizing information.
    6.  Chilled water and hot water piping routes.
    7.  Locations of louvers and duct penetrations in the building exterior shell.

c.  60% Detailed Design Mechanical Systems drawings showing:

    1.  Make up air duct and sizing information.
    2.  Acid exhaust duct and sizing information.
    3.  Water chiller(s) and boiler(s).
    4.  Chilled water and hot water piping and pumping systems.
    5.  Performance schedules for all equipment.

d.  Attendance at "Design Progress" meetings with the entire design team.

e.  Preparation of Process Flow Diagrams for HVAC systems.

f.  Preparation of outline specifications for materials and systems equipment, for the 30% Detailed Design milestone and preliminary detailed specifications for the 60% Detailed Design milestone.

g.  Development and confirmation of sequences of operation of all new HVAC equipment.

h.  Final Mechanical Systems drawings showing:

    1.  All duct and sizing information including details, sections and installation requirements.
    2.  Water chiller(s) and boiler(s) including details, sections and installation requirements.
    3.  All chilled water and hot water piping and pumping systems including details, sections and installation requirements.
    4.  Detailed performance schedules for all HVAC equipment.

i.  Final Process Flow Diagrams for HVAC systems.

j.  Final specifications for materials and systems equipment.

k.  Specification of sequences of operation of all HVAC equipment.



3)    <u>Construction Phase Services</u>

    a.    Value analysis of contractor bid alternates or changes to the scope.

    b.    Processing of shop drawings.

    c.    Response to field requests for information.

    d.    Attendance at owner construction management meetings as may be required.

    e.    Site visits to monitor the progress and status of the work.

    f.    Preparation of site visit reports.

    g.    Assistance in the resolution of start-up issues.

    h.    Preparation of "As-Built" drawings from subcontractor redlined drawings.

B.    The Fee for the HVAC services set forth in Paragraph No. 2.A above is based on a Not-to-Exceed maximum price of $85,000.00, to be reimbursed based on progress payments for work completed.   All reimbursement shall be based on the Consultant's Hourly Rates as follows:

| | | |
|---|---|---|
| 1) | Principal Engineer (Engineering and Design) | $200.00/hr; |
| 2) | Principal Engineer (consulting, non-design related) | $275.00/hr; |
| 3) | Senior Associate (Engineering and Design) | $110-150.00/hr; |
| 4) | Associate | $110-125.00/hr; |
| 5) | Designer | $85-100.00/hr; |
| 6) | Drafter, CAD and Operator | $55-75.00/hr; |
| 7) | Administrative Support Staff and Lab Technician | $55-75.00/hr. |

C.    All reimbursement for additional services shall be in accordance with the Consultant's rates as set forth above.

D.    Reimbursable expenses, such as printing, shipping, travel, etc. shall be billed and paid to the Consultant at their actual cost, with no mark-up. It is also understood and agreed that the reimbursable expenses shall not exceed $6,000.00 without the prior written consent of the Company's Designated Representative. Expenses over and above this threshold will not be billable unless approval has been received in writing.   All expenses shall be backed up with the proper documentation, when applicable.

E.    The following services are not included as part of this Contract:

    1)    Electrical, plumbing or fire protection design services;



2)    DDC Controls system design services.

F.    The Consultant shall commence its services on or about 08/15/00 and shall continue until the Company accepts the Consultant's Services as complete, but in no case later than 04/15/01.

## ATTACHMENT "C"

### REQUISITION FOR PAYMENT

TO:  ADP MARSHALL, INC.
2480 N. Arcadia Avenue
Tucson, AZ  85712

Date: _____

Job: _____

Requisition for Payment # _____     Covering Month of _____

Sub Contractor: _____

Address: _____

Item of Work: _____

| BRANCH OF WORK | COST CODE | VALUE OF BRANCH | VALUE OF WORK COMPLETE TO LAST REPORT & MATERIALS STORED | VALUE OF WORK COMPLETE SINCE LAST REPORT & MATERIALS STORED | TOTAL VALUE WORK COMPL. TO DATE |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| NET ADDITIONS & DEDUCTIONS | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| TOTAL | | | | | |

NET AMOUNT OF CONTRACT TO DATE, INCLUDING ADDITIONS & DEDUCTIONS ......................... _____

VALUE OF UNCOMPLETED WORK ............................................................. _____

VALUE OF WORK COMPLETED TO DATE ....................................................... _____

LESS _____ RETAINED _____

LESS PREVIOUS PAYMENTS _____

AMOUNT OF PAYMENT FOR MONTH OF _____

The undersigned Contractor certifies that the work covered by this application has been completed in accordance with the Contract Documents, that all amounts have been paid by him for work for which previous payment requisitions were issued and payments received from the General Contractor and that the current payment shown herein is now due.